UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CLAUDE DAVID CONVISSER, POP DIESEL AFRICA, INC., | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) )   Civil Action No. 3:24-cv-00072 |
| EXXON MOBIL CORPORATION, et al., | ) ) ) ) |
| Defendants. | ) ) ) ) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM**

Defendants Julie Convisser, individually and as Trustee of the Martin Convisser Trust, James P. Cox, III, Linden House LLC, Wial LLC, and Cambridge Healthcare Holdings, LLC, (hereafter "Defendants" collectively), by counsel, hereby submit this memorandum in support of their Motion to dismiss under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1).

**Introduction**

Plaintiff's lengthy Complaint raises innumerable allegations against Defendants, most of them in no way related to the supposed cause of action at bar. Plaintiff blames his personal family grievances on the Defendants, and in retaliation alleges that they are involved in a massive business conspiracy. These allegations, of course, grant him the "hook" to file in federal court, leading him to allege supplemental jurisdiction over a number of claims arising from state law. For the reasons which follow, the Court should dismiss the improper, wholly implausible conspiracy claims, and thereafter dismiss the remaining state law claims for lack of subject

matter jurisdiction. Because the claims under Counts 1 and 2 are essentially separate from the claims in Counts 3-6, Defendants will address each in turn as though filing separate motions to dismiss.

I.    **Plaintiff's Business Conspiracy Claims Must be Dismissed Under 12(b)(6)**

The Plaintiff's Complaint fails to state any plausible business conspiracy claim against the Defendants. Plaintiff uses his verbose Complaint to baselessly speculate a massive international business conspiracy, involving Exxon Mobile, six unknown intelligence agents and/or mafiosos, and two shadowy business entities[1] engaged in the sabotage of Plaintiff's funding and theft of trade secrets along with murder, arson, extortion, and other crimes.

While the "factual" allegations in the Complaint are certainly an entertaining read, Plaintiff less amusingly dragged 25 actual people and small businesses into this litigation alongside the 8 anonymous defendants and Exxon. Among these 25 are the Defendants, including Plaintiff's sister Julie, her attorney James Cox, and the business entities responsible for housing and care of Plaintiff's elderly parents (the "Cambridge Defendants").

Plaintiff concludes without any basis that Defendants were in league with unknown entities conspiring against him. The "factual" allegations throughout the Complaint on which

---

[1] For brevity and the reader's convenience, Plaintiff titles these unknown entities "Wende's Where's the Beef Healthy Vegetable Sauce Manufacturing Company" and "Wende's Where's the Beef Tropical *Jatropha* Tree Planting Company".

Plaintiff posits his claims range from irrelevant[2], to baseless[3], to facially nonsensical[4], to necessarily false[5], resulting in an often indecipherable and generally improper legal pleading. Plaintiff's Complaint is no less complex for the fact that he continually references the anonymous (read: non-existent) entities throughout, using faceless characters to endlessly speculate as to the real named parties' motives, actions, and intentions. Ultimately, Plaintiff demands $100 billion[6] in compensatory damages, which he asks be trebled to $300 billion pursuant to the RICO statute and the Virginia Code.

Ultimately, this Complaint would require the reader to put aside logic and common sense to accept the Plaintiff's speculation and wildly unreasonable inferences and deductions. Plaintiff's legal claims are factually incredible, fail to assert plausible injury, improperly name non-existent parties, and fail to state cognizable claims on their face; as such, this Court should dismiss Counts 1 and 2 of the Complaint with prejudice and award costs to Defendants.

---

[2] See Pls'. Compl., ¶ 131, Plaintiff randomly accuses a defendant of racism. See also Compl., ¶ 248(c), Plaintiff makes no allegation as to how this statement, even if true, would harm his reputation for investors.

[3] See Compl., ¶ 105, Plaintiff alleges that a defendant, David Butler, began appearing at a restaurant at which Butler "had not been a regular attendee" to surveil the Plaintiff; Plaintiff provides no basis for this assertion. See also Compl., ¶¶ 134(c), 135, Plaintiff baselessly alleges his parents' caregivers are former intelligence agents.

[4] See Compl., ¶ 106, Plaintiff states that the alleged conspiracy prevented him from using his email account and PACER, then immediately allowed him back on the following day. See also Compl., ¶ 173(d)(i), Plaintiff alleges poisoning with a flu virus based on extremely unreasonable inferences.

[5] See Compl., ¶¶ 212, 228, Plaintiff alleges consorting with Al Qaeda to broker peace with the Islamic State, which if true would constitute a violation of 18 U.S.C. § 2339, and possibly constitute treason more generally.

[6] Reminiscent of another equally outlandish demand: https://www.youtube.com/watch?v=LCZMhs_xpjc

**Legal Standard**

A court should dismiss a complaint if it does not contain enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court is not required to accept as true a legal conclusion couched as a factual allegation, conclusory allegations devoid of any reference to actual events, or allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. Newell v. Carter Bank & Tr., No. 4:21-cv-007, 2022 U.S. Dist. LEXIS 45720, at *10 (W.D. Va. Mar. 15, 2022).

Thus, in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level. Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

**Argument**

**I.    Counts 1 and 2 Present Implausible and Conclusory Allegations[7]**

    a.  Plaintiff Presents Legal Conclusions as Allegations

Plaintiff presents the elements of his conspiracy claims with conclusory statements. See Ashcroft v. Iqbal, 556 U.S. 662 (2009) (stating that a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements"). In his damages assessment (which is also implausible), Plaintiff simply alleges,

---

[7] Defendants also take issue with Plaintiffs' claimed damages and the statutory basis for each individual count. Rather than re-print those arguments here, Defendants reference and incorporate those same arguments being made by the Collateral Defendants in the brief being filed on this same date. See Sections II and III of the Collateral Defendants' Memorandum in Support, Docket No. 71, pgs. 7-11.

"[i]n all circumstances, defendants' tortious actions proximately caused plaintiffs' damages". (Compl., ¶ 319). Plaintiff fails to tie any of the Defendants' alleged conduct to his damages; in fact, he blames himself, Exxon Mobile, the "Petroleum-Mafia", John Doe Standard Oil Trust Intelligence Service Number 2, and the other unknown parties; never once does Plaintiff link any of the alleged damages to conduct from any named defendant other than Exxon.

Furthermore, Plaintiff's allegations of statutory violation are themselves conclusory. The "[f]ederal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." Ashcroft, 556 U.S. at 686. Despite his claim that "Plaintiffs have drafted this complaint with particularity as to their allegations and the supporting details with regards to all defendants", Plaintiff fails to refer to any "facts" alleged against Defendants in Count 1 or Count 2 of the Complaint. (Compl., ¶ 338). In fact, Plaintiff fails to allege any plausible connection between the Defendants and any conspiracy against the Plaintiffs' business. Count 1 and Count 2 are the very definition of a "threadbare recital of the elements of a cause of action". Ashcroft, 556 U.S. 662. Plaintiff recites the statutes and their elements, but these recitations contain no reference to any alleged "facts" involving the Defendants.

    b. <u>Plaintiff Presents Unreasonable Inferences as Facts</u>

Prior to the bare recitation of statutory language and common law, the Complaint explores 319 paragraphs of "factual" allegations. Like the rest of the Complaint, the allegations referring to Defendants are wholly implausible and often facially nonsensical. In any case, none of the allegations against the Defendants plausibly indicate that they are involved in a business conspiracy.

      *i.*      *Allegations against Julie Convisser*

Of any of the Defendants, Ms. Convisser receives the most attention throughout the Complaint. Nevertheless, Plaintiff still fails to articulate a plausible claim against her as it relates to a conspiracy against his biodiesel business. Plaintiff repeatedly airs his personal grievances with his sister, but the only two concrete allegations he raises to connect Ms. Convisser with the supposed conspiracy are her relationship with Wende DuFlon, another innocent defendant whom Plaintiff baselessly speculates has ties to the CIA, and Jeanne Reimers, who Plaintiff broadly declares a racist "with a background or connection to the petroleum industry [in Texas]". (Compl., ¶ 131). Beyond these allegations, Plaintiff makes the occasional conclusory statement that she associates with unknown intelligence/ Mafia defendants[8], claiming that the accomplishments of Ms. Convisser and her sons over the past several years were not the result of their own hard work, but were instead rewards from the "Petroleum-Mafia-CIA". Whether it was an alleged speaking engagement, her son's internship, or another son's military service, Ms. Convisser's family didn't earn a thing; nameless, faceless agents were providing it all. Besides being designed to hurt a family member, these allegations bear no relationship to the alleged conspiracy.

Instead, the real thrust of Plaintiff's complaints against Ms. Convisser is that she is conspiring with these anonymous oil/intelligence agents to poison Martin Convisser and restrict contact from Plaintiff. None of these allegations are remotely plausible; all rely extensively on faceless intelligence/Mafia entities, and the only business-related allegation Plaintiff makes among his relentless airing of grievances is that this course of action reduced funding from his father. None state a RICO or business conspiracy claim against Ms. Convisser.

---

[8] (Compl., ¶¶ 145(c), 147).

### ii.     Allegations against the Cambridge Defendants

The Cambridge Defendants receive similar treatment: bald allegations without any plausible basis that they have conspired with Ms. Convisser to harm Plaintiff's parents, all in the hope of restricting Plaintiff's access to support from Martin Convisser. Plaintiff alleges a "manufactured" covid outbreak in the Convissers' nursing home to prevent Plaintiff from visiting, which somehow connects to the conspiracy against Plaintiff's business. Otherwise, Plaintiff's references to the Cambridge Defendants are all about his personal grievances and his complaints about the care being given to his parents. On the face of the Complaint, Plaintiff's allegations against the Cambridge Defendants do not rise beyond speculation.

### iii.    Allegations against James P. Cox, III, Esq.

Other than having the temerity to serve as a lawyer for Ms. Convisser and serve his ethical duty to further her legal interests, it's not clear why Mr. Cox is named in the Complaint. Plaintiff never actually alleges Mr. Cox's involvement with the alleged conspiracy, only that Mr. Cox advised Ms. Convisser on a number of subjects that were personally unpleasant to the Plaintiff. There is not a single allegation throughout the entirety of the Complaint that indicates Mr. Cox associated with any anonymous figures of the conspiracy, or that he was even aware of a conspiracy. As such, the claims against Mr. Cox fail on their face.

The Court need not entertain implausible, baseless factual allegations. The Plaintiff draws connections between personal care of his parents and the alleged business conspiracy which are nonsensical on the face of the Complaint; furthermore, Plaintiff has failed to allege any facts on the face of the Complaint against Mr. Cox that would indicate his participation in the alleged conspiracy.

For all of these reasons, Counts 1 and 2 should be dismissed as against the Defendants.

## II.  Plaintiffs' Counts 3-6 Should be Dismissed Under 12(b)(1)

In reality, the Plaintiffs' Complaint is two entirely different sets of claims mashed into one – a civil RICO claim on the one hand and a guardianship petition on the other. Presumably, they are brought together in a transparent attempt to haul the Defendants into federal court on what are entirely claims under state law. For the reasons which follow, the Court should reject this attempt, and dismiss Counts 3-6 by declining to exercise supplemental jurisdiction over them.

Plaintiff argues that the Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, basing federal question jurisdiction on Plaintiff's RICO allegations and, in the alternate, diversity jurisdiction given the healthy damages demand. Plaintiff then also postulates that this Court thereby has supplemental jurisdiction over Plaintiff's guardianship claims under 28 U.S.C. § 1367(a), in that Plaintiff's Counts 3-6 "are so related to [the business conspiracy claims] that they form part of the same case or controversy under Article III of the United States Constitution". (Compl., ¶ 12).

As discussed above, the conspiracy allegations are entirely without merit. Once the Court dismisses those claims, the guardianship claims should be dismissed for lack of subject matter jurisdiction. Even if the Court does not dismiss the conspiracy claims in their entirety, the subject matter of the guardianship counts clearly does not make up the same controversy. Furthermore, the Fourth Circuit has repeatedly maintained a "domestic relations" exception to diversity jurisdiction, which returns issues such as guardianship and conservatorship to state court adjudication. Finally, supplemental jurisdiction is discretionary, and the factors do not weigh in favor of review here.

**Legal Standard**

A court must dismiss an action if it determines at any time that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); Saphilom v. Vichittavong, No. 3:23-cv-00027, 2023 U.S. Dist. LEXIS 174596, at *2 (W.D. Va. Sep. 27, 2023). Motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) require the court to determine whether it has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P. 12(b)(1); Arbaugh v. Y & H Corp., 546 U.S. 500, 507 (2006). "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). Motions to dismiss for lack of subject matter jurisdiction can arise in two ways: (1) when the moving party maintains that the complaint fails to allege facts upon which subject matter jurisdiction can be based or (2) when the moving party maintains that the jurisdictional allegations within the complaint are not true. Adams, 697 F.2d at 1219.

**Argument**

A. There is No Original Jurisdiction

Plaintiff has brought what are clearly guardianship claims under state law claims before this Court, attempting to use the federal question jurisdiction of a RICO claim and diversity jurisdiction via his outrageous damages estimate. The Fourth Circuit and the Supreme Court have often noted that when the single federal-law claim in an action is eliminated at an early stage of the litigation, this Court must have a powerful reason to choose to continue to exercise jurisdiction. Dula v. McPherson, 1:99CV00347, 1999 U.S. Dist. LEXIS 16945, at *6 (M.D.N.C. Aug. 4, 1999) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988)). There are

countless cases in which federal courts have exercised their discretion to dismiss state law claims after dismissing the claims invoking federal court jurisdiction. *See e.g.*, Field v. Berman, 526 Fed. Appx. 287 (4th Cir. 2013); Williams v. Aztar Ind. Gaming Corp., 351 F.3d 294, (7th Cir. 2003); Home Quest Mortg. LLC v. Am. Family Mut. Ins. Co., 340 F. Supp. 2d 1177 (D. Kan. 2004); Cotton v. Corinth Gas & Water Dep't, 406 F. Supp. 2d 713 (N.D. Miss. 2005). As with each of these courts, this Court should dismiss the underlying state law claims for lack of subject matter.

B. There is No Common Controversy

Regardless of how the Court rules on the conspiracy claims, there is no common controversy between a (i) widespread business conspiracy involving shadowy and unknown intelligence operatives, the Mafia, and Exxon and (ii) a guardianship petition involving Plaintiff's parents. Nowhere is that better demonstrated than in Counts 3-6, which make no mention of the alleged conspiracy beyond a conclusory (and implausible) claim that Ms. Convisser and the Cambridge Defendants consulted with unknown intelligence figures in their treatment decisions for his parents. Counts 1-2 could be (and should) be severed from Counts 3-6 with no impact on either one, and the Court should use its discretion to decline supplemental jurisdiction over the guardianship claims in Counts 3-6.

C. Probate Exception

As or more importantly, the Fourth Circuit has long recognized the so-called "Probate Exception," which precludes federal courts from considering matters that are within the exclusive jurisdiction of state probate courts, including the appointment and deployment of guardians. For instance, in Lanier v. Lanier, 2024 U.S. Dist. LEXIS 167451, at *17 (E.D.N.C. Aug. 23, 2024), the court noted that the probate exception prevents federal courts from reversing

the appointment of a guardian or appointing a new guardian. Other courts in the circuit have emphasized that the probate exception prohibits federal jurisdiction over matters exclusively within state probate courts' jurisdiction. Myers v. McKnight, No. 2:10-3259-RMG-RSC, 2011 U.S. Dist. LEXIS 6763, at *14 (D.S.C. Jan. 4, 2011); Va. Code § 64.2-2107 (granting VA state courts original jurisdiction over guardianship and conservatorship); *see also* Baker, Donelson, Bearman, Caldwell & Berkowitz, PC v. Chopin, 2022 U.S. App. LEXIS 25074, *4 (11th Cir. 2022); Gromer v. Mack, 799 F.Supp.2d 704 (N.D. Tex. 2011).

Count 5, Plaintiff's petition for guardianship and conservatorship, falls directly under the probate exception and in the spirit of what the Supreme Court articulated in Marshall v. Marshall, 547 U.S. 293 (2006). Guardianship and conservatorship are inherently state law issues, and therefore the petition here should be dismissed for the Plaintiff to refile in state court if he desires. Counts 3, 4, and 6 are directly related to the relief being sought in Count 5, and regardless of how the counts are labelled they all seek the same thing – control by Plaintiff over his parents and their assets, and the removal of his sister from that position.

D.  The Court Has Discretion

District courts may decline to exercise jurisdiction over supplemental state law claims pursuant to 28 USCS § 1367(c). This discretion can be exercised on a case-by-case basis based on its analysis of judicial economy, convenience, fairness, and comity. City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997) The Supreme Court has also indicated that the discretionary factors will favor a decision to relinquish jurisdiction when state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought. Cohill, 484 U.S. at 350 n.7.

In Counts 3-6, state issues substantially predominate; indeed, they are the entire basis for Plaintiff's claims. As has been oft-repeated in the memorandum, the second half of Plaintiff's claim Complaint is a guardianship proceeding which has been attached, Mary Shelley-like, to an entirely implausible civil RICO matter. The Court's exercise of discretion will not deprive Plaintiff of a right to pursue his guardianship claims, but merely he do so in the appropriate forum of state court.

### III.    Conclusion

The Complaint is brought entirely on the alleged existence of a mass conspiracy, organized and operated entirely by unknown figures. The conspiracy is speculative, the allegations surrounding it implausible, and the Complaint fatally defective. The Defendants should have the claims in Counts 1 and 2 dismissed as against them. Then, having dismissed them from the RICO portion of the Complaint, the Court should decline to exercise supplemental jurisdiction over the guardianship proceeding and dismissed Counts 3-6 as well.

Respectfully Submitted,

JULIE CONVISSER, individually and as Trustee of the Martin Convisser Trust
JAMES P. COX, III
LINDEN HOUSE LLC
WIAL LLC
CAMBRIDGE HEALTHCARE
    HOLDINGS, LLC

By Counsel

*/s/ David W. Thomas*
David W. Thomas, Esq. (VSB No. 73700)
MichieHamlett PLLC
310 4th Street NE, 2nd Floor
Charlottesville, VA 22902
Tel. 434-951-7224
Fax. 434-951-7244
dthomas@michiehamlett.com

## CERTIFICATE OF SERVICE

    I hereby certify that on this 4th day of October, 2024, I filed the foregoing via the Court's CM/ECF system, which will send notification of such filing (NEF) to all counsel of record registered to receive electronic pleadings in this case.

        */s/ David W. Thomas*
        David W. Thomas, Esq. (VSB No. 73700)