CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
March 13, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

Claude David Convisser          )
                                )
            and                 )
                                )
POP Diesel Africa, Inc.,        )        Civil Action No. 3:24-cv-00072
                                )
            Plaintiffs,         )
                                )
v.                              )
                                )
Exxon Mobil Corporation *et al.*, )
                                )
            Defendants.         )

## MEMORANDUM OPINION

Plaintiff Claude David Convisser, representing himself and co-Plaintiff POP Diesel Africa, Inc. as counsel, alleges that Exxon Mobil Corporation ("Exxon") and numerous individuals engaged in a vast conspiracy to harm Plaintiffs' alternative fuel business. In addition to claims related to that alleged conspiracy, Plaintiffs allege several state-law claims related to power-of-attorney, guardianship, and conservatorship arrangements for Claude Convisser's elderly parents, Martin and Colette Marie Convisser, as well as claims related to the administration of certain trusts created by the Convisser family.

This matter is before the court on eleven motions to dismiss filed by Defendants,[1] (Dkts. 124, 126, 128, 158, 162, 164, 169, 220, 222, 230, 233), as well as Plaintiffs' motions for

---

[1] Two Defendants named in Plaintiffs' amended complaint—Parth S. Tewari and Anandha Kumar Deekaram—evidently have not been served as of the date of this opinion and have not made appearances. Both Tewari and Deekaram appear to reside outside the United States. While the usual 90-day deadline for service of process does not apply to service in a

leave to file a second amended complaint (Dkts. 117, 150, 151), Plaintiff Claude Convisser's renewed motion for a temporary restraining order (Dkt. 37), and Plaintiffs' motion for leave to take early depositions (Dkt. 32).

For the reasons outlined below, the court will grant all but one of the motions to dismiss. The remaining motion to dismiss, filed by Defendants Julie Convisser (individually and as Trustee of the Martin Convisser Trust), Linden House, LLC, WIAL, LLC, Cambridge Healthcare Holdings, LLC, and James P. Cox, III (Dkt. 126), will be granted in part and denied in part. Plaintiffs' motions for leave to file a second amended complaint (Dkts. 117, 150, 151) will be granted in part and denied in part. Claude Convisser's renewed motion for a temporary restraining order (Dkt. 37) will be dismissed for lack of subject matter jurisdiction, and Plaintiffs' motion for leave to take early depositions (Dkt. 32) will be denied.

## I.    Background

### A.  Factual History

The following facts are taken from Plaintiffs' amended complaint and proposed second amended complaint. They are accepted as true when resolving Defendants' motions to dismiss and Plaintiffs' motion for leave to amend. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

foreign country, Fed. R. Civ. P. 4(m), courts have recognized that "a plaintiff must still act diligently and effectuate service abroad within a reasonable period of time." *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, No. AW-10-2352, 2011 WL 4102084, at *4 (D. Md. Sept. 13, 2011) (collecting cases). Approximately five months have passed since Plaintiffs named Tewari and Deekaram in their amended complaint, and the court previously reminded Plaintiffs on November 19, 2024, that they needed to file proof of service for these parties. (Dkt. 172 at 9.) Plaintiffs are advised that they must serve Tewari and Deekaram pursuant to Federal Rule of Civil Procedure 4(f) within a reasonable time period if they wish to continue pursuing their claims against these two parties. This opinion does not resolve the merits of Plaintiffs' claims against Tewari and Deekaram, who are named in Counts 1 and 2 of Plaintiffs' amended complaint and proposed second amended complaint. However, the court notes that the allegations against Tewari and Deekaram appear to suffer from the same deficiencies as Plaintiffs' claims against the other Defendants named in Counts 1 and 2.

(2009). Plaintiffs' amended complaint and proposed second amended complaint are each well over 200 pages long and contain hundreds of paragraphs of factual allegations. The court has reviewed the facts alleged in both pleadings when reviewing the pending motions. This opinion provides an overview of the key facts relevant to Plaintiffs' claims.

1. Alleged business conspiracy against Plaintiffs

Convisser and his company, POP Diesel Africa, Inc., advocate for the use of a particular type of plant oil as an alternative to petroleum diesel fuel. (Prop. Second Am. Compl. ¶¶ 1, 26 [hereinafter "Prop. SAC"].) The plant oil is derived from the *jatropha curcas* tree. (*Id.* ¶ 34.) Plaintiffs allege that Exxon has spent years engineering a sweeping conspiracy to interfere with their efforts to produce and sell the plant oil. (*See id.* ¶¶ 1, 44–45.) They claim that Exxon has enlisted many of the other named Defendants in this conspiracy through Exxon's "extensive network of agents affiliated with its intelligence and security services and in cooperation with its ally the New York organized crime biodiesel Mafia." (*Id.* ¶ 45; *see id.* ¶ 280.) Plaintiffs identify dozens of incidents and injuries—both personal and professional—that they attribute to Exxon's plot against them. The following sections outline a representative sample of their allegations against the various groups of Defendants named in the pleadings.

i. *Exxon and the "New York Biodiesel Mafia"*

Plaintiffs allege that Exxon and the "New York Biodiesel Mafia" are threatened by POP Diesel Africa's business model and have attempted to interfere with its business development at every turn. Those alleged efforts include lobbying world leaders to endorse a Global Biofuel Alliance for the "sole purpose" of thwarting POP Diesel Africa, (*id.* ¶ 176),

engaging in "comprehensive unlawful, electronic surveillance of [Claude Convisser's] residences, places of work, motor vehicles, and telephonic and Internet communications," (*id.* ¶ 304), placing malware on Plaintiffs' computers, (*id.* ¶ 307), breaking into Convisser's home several times, (*id.* ¶ 308), stealing proprietary information, (*id.* ¶¶ 362–65), using bloodhounds to surveil him, (*id.* ¶ 382), poisoning him dozens of times, (*id.* ¶ 305), diminishing the sale value of his parents' home, (*id.* ¶ 383), killing one of Convisser's elderly cousins, (*id.* ¶ 392), and trying to kill his parents, (*id.* ¶ 425), among many others.  Plaintiffs allege that Exxon or its unnamed agents cultivated relationships with many people in Convisser's life to further the conspiracy, including by inviting several individuals to "their worldwide headquarters for defeating plaintiffs in Portugal."  (*Id.* ¶ 306.)

A large part of Exxon's conspiracy allegedly targeted Plaintiffs' efforts to develop their business in Ghana and Mali.  (*See id.* ¶¶ 311–41.)  Plaintiffs claim that Exxon and the Mafia invested substantial resources to block POP Diesel Africa from the market for *jatropha* seeds in Ghana, including by orchestrating an international flood and introducing *jatropha* seeds from abroad that were "genetically modified to succumb to a future contagion."  (*Id.* ¶¶ 324, 341.)  They also allege that the conspirators lured away POP Diesel Africa's Ghanian partners "by funding each one's attempt to replicate" POP Diesel's business, (*id.* ¶¶ 315), and funded a company to compete with POP Diesel Africa's proposal to produce "an inexpensive, lunchtime vegetable sauce containing textured soy protein" for distribution to schoolchildren in Ghana, (*id.*).

Plaintiffs further claim that Exxon's agents killed several associates of Convisser— and even orchestrated the murder of a former Ghanian president—to interfere with the

president's efforts to expose corruption in the country and defeat POP Diesel Africa's business efforts. (*Id.* ¶¶ 316–17, 327.) They also allege that Exxon was behind decisions made by Ghanian government officials and private parties at various times to evict Convisser from his residence and office, assault him, and arrest him. (*Id.* ¶¶ 320–24.) And they assert that Exxon's agents worked with the United Nations to imprison Convisser to prevent him from brokering peace with a terrorist group in Mali. (*Id.* ¶¶ 332–40.)

  ii. *"Charlottesville Group"*

The "Charlottesville Group" includes Defendants Linden House, LLC, Wial, LLC, and Cambridge Healthcare Holdings, LLC (collectively, the "Linden House companies"), as well as Julie Michelle Convisser, Wende S. Duflon, Kathi L. Ayers, Jennifer C. McManus, James L. Bicksel, and James P. Cox, III. It also includes proposed Defendants Michie, Hamlett, Lowry, Rasmussen & Tweel, PLLC ("MichieHamlett"), "John Doe Hospice Care Provider," and Family Heritage Trust Company.[2] (*Id.* ¶ 222.)

Linden House, LLC, operates Linden House Assisted Living in Albemarle County. (*Id.* ¶ 225.) Claude Convisser's elderly parents, Martin and Colette Marie Convisser, live in the facility. (*Id.*) Wial, LLC owns the physical facility, and Cambridge Healthcare Holdings, LLC owns and controls both Linden House, LLC and Wial, LLC. (*Id.* ¶¶ 226, 228–29, 233.) Claude Convisser alleges that Cambridge Healthcare Holdings, LLC "is loyal to" Exxon and its intelligence agents and has caused Linden House, LLC and Wial, LLC "to perform their will in monitoring the relations between [Claude Convisser] and his parents" at the facility,

---

[2] Parties referred to as "proposed Defendants" are named in the proposed second amended complaint but not in the amended (operative) complaint.

for the purpose of preventing his parents from helping fund POP Diesel Africa. (*Id.* ¶ 234; *see id.* ¶¶ 223, 227.)

Julie Convisser, Claude Convisser's sister, exercises power of attorney for one or both Convisser parents and serves as Trustee of the Martin Convisser Trust. (*Id.* ¶¶ 245, 278.) Plaintiffs allege that Exxon is using Julie Convisser to gain control of the Convisser parents' finances "so that their money could no longer support . . . POP Diesel's business." (*Id.* ¶ 387.) They claim that she has been carrying out Exxon's instructions by reducing Claude Convisser's distributions from family trusts, declining his requests for financial support, and preventing him from visiting his parents at Linden House. (*Id.* ¶¶ 385, 402–05.)

Wende Duflon is a friend or acquaintance of Julie Convisser. (*See id.* ¶ 238.) Plaintiffs allege that Duflon is an intelligence agent for Exxon and moved to Charlottesville on Exxon's behalf to "supervise" Julie Convisser's interactions with her parents and brother. (*Id.* ¶ 242.) They claim that Duflon connected Julie Convisser to caregivers for the Convisser parents and that those caregivers are also intelligence agents. (*Id.* ¶¶ 243–44.)

Plaintiffs allege that the other Defendants in the Charlottesville Group carried out instructions from Julie Convisser or Exxon to interfere with Claude Convisser's access to his parents and/or deprive him of financial support. Kathi Ayers is an attorney who allegedly drafted Martin and Colette Convisser's wills and trusts and was involved in assigning Martin Convisser's power of attorney to Julie Convisser. (*Id.* ¶ 245.) Jennifer McManus is an attorney who served as the first Trustee of two family trusts: the Convisser Family Trust and the Claude Convisser Trust. (*Id.* ¶ 252.) Family Heritage Trust Company is currently the acting Trustee of the Convisser Family Trust and Claude Convisser Trust. (*Id.* ¶ 265.)

James Bicksel is a neurologist who, in August 2021, signed a letter concluding that Martin Convi, that Martin Conviser lacked the capacity to make informed decisions about his medical care and administration of property, which allegedly resulted in Julie Conviser gaining control of the Conviser parents' medical and financial affairs.  (*Id.* ¶ 255.)  Plaintiffs claim that Bicksel's incapacity determination was false and part of the conspiracy against them.  (*Id.* ¶¶ 256–57.)

James Cox is an attorney at the MichieHamlett law firm.  (*Id.* ¶ 259.)  Allegedly working on behalf of Exxon, he advised Julie Conviser to direct Linden House, LLC and Wial, LLC to issue a no-trespass order against Claude Conviser in July 2024 and further advised Julie Conviser to cut off his financial support.  (*Id.* ¶¶ 260–63.)  Cox allegedly took those actions in retaliation for concerns Claude Conviser raised about his mother's wellbeing and the billing for her hospice care.  (*Id.*)

Finally, Plaintiffs allege that Colette Marie Conviser's unnamed hospice care provider "is controlled by and follows the directions of defendant Exxon Mobil and its intelligence and security services" and suggests Exxon is attempting to kill her by depriving her of the diet she needs to survive.  (*Id.* ¶¶ 264, 432–33, 435.)

      iii.  *"Albemarle County Group"*

The Albemarle County Group includes named Defendants Marcus T. Wiley, Michael Laird (also known as Michael Goff), Keith Ford, Charles L. Pinnell, Hunter S. Wyant, Ray W. Hughes, Elizabeth Ann Hughes, Emil Kutilak, Charles M. Steppe, and David R. Butler, as well as unnamed Defendants "John Doe Healthy Vegetable Sauce Manufacturing Company" and "John Doe Tropical Jatropha Tree Planting Company Number 1."  (*Id.* ¶ 72.)

The Albemarle County Group is mostly comprised of individuals who regularly meet for breakfast at a café in Crozet, Virginia.  (*Id.* ¶¶ 366–71.)  Plaintiffs allege that certain members of the group were interested in investing in POP Diesel Africa, but that others, acting as agents for Exxon and the Mafia, conspired to sabotage investment in the company, steal an investment prospectus, and divert investment to competing companies.  (*Id.* ¶¶ 73, 361–80.)

     iv.  *"North American Spiritual Group"*

The North American Spiritual Group includes two named Defendants: Subramaniam Krishnan (also known as Rajan Krishnan) and Kenneth Edward Steben.  (*Id.* ¶ 126.)  It also includes an unnamed "Jane Doe Funder of North American Mata Amritanandamayi Hubs." (*Id.*)  These Defendants, along with Claude Convisser, allegedly were members of a movement dedicated to the Indian humanitarian and spiritual figure Mata Amritanandamayi, or "Amma."  (*See id.* ¶¶ 129, 138.)  Krishnan is allegedly a former employee of Exxon Mobil. (*Id.* ¶ 128.)  Plaintiffs claim that Krishnan, Steben, and an unnamed investor worked with Exxon to purchase and build several temples for the movement for the purpose of surveilling its members and ultimately preventing POP Diesel Africa from competing with Exxon.  (*Id.* ¶¶ 130–41.)  They also allege that these Defendants conspired to thwart Convisser's ability to raise investment for POP Diesel Africa by harming his reputation and relationships with other members of the spiritual group.  (*Id.* ¶¶ 127, 132–34, 155.)

     v.  *"Ghana Group"*

The Ghana Group includes proposed Defendants ChildFund International, USA, Children Believe (also known as Christian Children's Fund of Canada), Brenda Powell (also

known as Brenda Jones), and unnamed proposed Defendant "John Doe Tropical Jatropha Tree Planting Company Number 3." (*Id.* ¶ 179.)  Plaintiffs allege that Powell runs Exxon's intelligence and security service in Ghana and Africa.  (*Id.* ¶ 179.)  They assert that ChildFund and Children Believe (or, alternatively, some unnamed actor) worked on behalf of Exxon to fund the unauthorized construction of a water pipe on property in Ghana owned by a POP Diesel Africa affiliate, with the intent to impair the affiliate's control over the land and "turn the local population against" it.  (*Id.* ¶¶ 184, 188–91, 194.)

vi. *John J. Davidson*

Davidson is an attorney and a childhood friend of Claude Convisser's.  (*Id.* ¶¶ 205–06.)  Plaintiffs allege that Exxon, its security and intelligence operatives, and the Mafia appointed Davidson as an agent to monitor Convisser and share information about his personal background, which Exxon then used to sabotage POP Diesel Africa's investment prospects.  (*Id.* ¶¶ 207, 209.)  They further allege that Davidson threatened to spread a rumor about Convisser's sexual orientation to damage POP Diesel Africa's investment prospects if Convisser did not stop his efforts to oppose Exxon's conspiracy.  (*Id.* ¶ 284.)

vii. *Victor M. Glasberg*

Glasberg is a civil rights attorney in Alexandria, Virginia.  (*Id.* ¶ 212.)  Plaintiffs state that Glasberg is a mentor and good friend of Claude Convisser's.  (*Id.*)  They allege that the "Petroleum-CIA" referred "attractive civil rights cases" to Glasberg to win his favor and in return, Glasberg agreed not to help Convisser file a lawsuit against them.  (*Id.* ¶¶ 214–15, 221.)  Plaintiffs also claim that an intelligence agent working for the CIA or Exxon sent Convisser a threatening email from Glasberg's account.  (*Id.* ¶ 216.)

B. **Procedural History**

Plaintiffs filed their initial complaint on September 9, 2024. Shortly thereafter, Claude Convisser filed a motion for a temporary restraining order ("TRO"), seeking injunctive relief related to his parents' living arrangements. (Dkt. 31.) The court construed the motion as requesting a TRO without notice to adverse parties and denied it because it did not comply with the procedural requirements in Federal Rule of Civil Procedure 65(b). (Dkt. 35.) Claude Convisser then filed a renewed motion for a TRO/preliminary injunction and asked the court to order briefing and hold a hearing on the motion. (Dkt. 37.) The court stayed briefing deadlines for that motion until after it resolved Defendants' motions to dismiss. (Dkt. 86.) The court also stayed briefing deadlines for a motion Plaintiffs filed requesting leave to take early depositions. (Dkts. 32, 86.)

After several Defendants filed motions to dismiss the original complaint, Plaintiffs amended their complaint as a matter of course on October 17, 2024. (Am. Compl. (Dkt. 100).) The amended complaint alleges nine different causes of action. The first three counts focus on the alleged business conspiracy against Plaintiffs. Count 1 alleges a violation of Virginia's civil conspiracy statute, Va. Code §§ 18.2-499, 18.2-500. (*Id.* ¶¶ 424–38.) Count 2 alleges a civil claim under the federal Racketeer-Influenced and Corrupt Organizations ("RICO") Act. (*Id.* ¶¶ 439–50.) Count 3 alleges a claim for unjust enrichment against unnamed competitor companies. (*Id.* ¶¶ 451–56.) Plaintiffs seek $500 billion in treble damages for the Virginia civil conspiracy and RICO claims. (*Id.* ¶ 423.)

The remaining six counts in the amended complaint allege state-law claims related to power-of-attorney, guardianship, and conservatorship arrangements for the Convisser

parents and the management of the Convisser family's trusts.  Count 4 petitions the court to review and terminate the power of attorney Julie Convisser exercises for one or both Convisser parents.  (*Id.* ¶¶ 457–76.)  Count 5 alleges a breach of the Convisser Family Trust Agreement.  (*Id.* ¶¶ 477–99.)  Count 6 petitions for guardianship of and a conservatorship for the Convisser parents.  (*Id.* ¶¶ 500–54.)  Count 7 seeks injunctive relief barring Julie Convisser, the three Linden House companies, and Cox, from making health care decisions for the Convisser parents.  (*Id.* ¶¶ 555–60.)  Count 8 alleges a claim for breach of fiduciary duty against Julie Convisser.  (*Id.* ¶¶ 561–73.)  And Count 9 alleges a claim for actual and constructive fraud against Kathi Ayers, Jennifer McManus, and James Bicksel.  (*Id.* ¶¶ 574–616.)

On October 24, 2024, Plaintiffs moved for leave to file a second amended complaint. (Dkt. 117.)  After filing that motion, they filed several attempts to update their proposed second amended complaint.  (*See* Dkts. 119, 120, 122, 150, 151, 166.)  On November 19, 2024, the court entered an order clarifying that it would consider the version of the proposed second amended complaint found at Docket No. 166-1 when resolving Plaintiffs' motion for leave to amend.[3]  (Dkt. 172.)  That version identifies a total of 39 named and unnamed Defendants and spans 260 pages.  (*See generally* Prop. SAC.)  It adds numerous factual allegations to support the nine counts found in the amended complaint, adds a claim for undue influence to Count 9, and adds a Count 10, which seeks an injunction against restrictions on Claude Convisser's visitation privileges at Linden House.  (*See id.*)

---

[3] Certain Defendants twice moved for a stay of all proceedings unrelated to the motions to dismiss until the court resolved those motions.  (Dkts. 61, 133.)  The court declined to grant a stay but did extend the briefing deadlines for several motions filed by Plaintiffs, as well as initial discovery deadlines, until after the resolution of Defendants' motions to dismiss.  (Dkts. 86, 172.)

Defendants, either individually or in groups, filed eleven different motions to dismiss Plaintiffs' amended complaint under Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6).  (Dkts. 124, 126, 128, 158, 162, 164, 169, 220, 222, 230, 233.)  Several Defendants also filed responses opposing Plaintiffs' motion for leave to file a second amended complaint.  (Dkts. 184, 186, 192, 200.)

## II.    Standard of Review

Federal Rule of Civil Procedure 8(a) states that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).  But to avoid Rule 12(b)(6) dismissal, the plaintiff must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over a complaint. *See* Fed. R. Civ. P. 12(b)(1). A defendant may bring either a facial or factual challenge to subject matter jurisdiction. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). A facial challenge, which certain Defendants raise here, "contend[s] that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation marks omitted). "[T]he facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

Under Federal Rule of Civil Procedure 15, a plaintiff may amend their complaint "once as a matter of course," provided they meet certain deadlines. Fed. R. Civ. P. 15(a)(1). Where, as here, a plaintiff has previously filed an amended complaint, the plaintiff may amend again "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* It should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards*, 178 F.3d at 242 (emphasis omitted) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). An amendment is futile when "the proposed amended complaint fails to satisfy the requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted). Thus, courts "are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021).

### III.    Analysis

### A.  Business Conspiracy Claims (Counts 1, 2, and 3)

The court will begin by considering Counts 1, 2, and 3 (the "business conspiracy claims"), which allege a claim under Virginia's civil conspiracy statute, a federal claim for civil relief under the RICO Act, and a common-law claim for unjust enrichment. The large majority of Defendants and proposed Defendants are named only in relation to these three claims.[4]

Defendants have moved to dismiss these counts for failure to comply with Rule 8's pleading requirements and/or for failure to state a claim on which relief may be granted. The court concludes that the portions of Plaintiffs' amended complaint and proposed second amended complaint that relate to Counts 1, 2, and 3—which include hundreds of paragraphs of factual allegations—fail to comply with Rule 8's pleading requirements. And even if the court excused that clear non-compliance, these three counts also fail to state any plausible claim for relief under Rule 12(b)(6).

### 1.  Plaintiffs' pleadings related to Counts 1, 2, and 3 fail to comply with Rule 8.

To comply with Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(d) further requires that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "When determining whether a complaint comports with the requirements of Rule 8, courts look to a variety of factors, including the length and complexity of the complaint,

---

[4] This applies to all Defendants except for Julie Convisser; Linden House, LLC; WIAL, LLC; Cambridge Healthcare Holdings, LLC; James Cox; Kathi Ayers; Jennifer McManus; and James Bicksel, and proposed Defendants MichieHamlett and "John Doe Hospice Care Provider."

whether the complaint is sufficiently clear to allow the defendant to defend himself, and whether the plaintiff had the benefit of counsel." *Cook v. Unisys Fed. Gov't Grp.*, No. 7:14-cv-00579, 2015 WL 5690976, at \*3 (W.D. Va. Sept. 28, 2015) (citing *Sewraz v. Long*, 407 F. App'x 718, 718–19 (4th Cir. 2011)). "Lengthy pleadings that offer confusing factual narratives and conclusory statements of law place an unjustified burden on the court and any party who must respond," and a complaint that fails to comply with Rule 8's requirements may be dismissed pursuant to Rule 12(b)(6). *Id.* (citing *North Carolina v. McGuirt*, 114 F. App'x 555, 558–59 (4th Cir. 2004)). The pleading requirements under Rule 8 "serve[] to prevent costly discovery on claims with no underlying factual or legal basis." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 326 (4th Cir. 2001).

The allegations in Plaintiffs' amended complaint and proposed second amended complaint that relate to Counts 1–3 do not meet Rule 8's pleading requirements. The amended complaint spans 215 pages, roughly 150 of which contain factual allegations that come before any of their legal claims. (*See* Am. Compl. ¶¶ 1–423.) Their proposed second amended complaint has ballooned to 260 pages in total, with nearly 200 pages of allegations preceding their legal claims. (*See* Prop. SAC ¶¶ 1–456.) Numerous details included in the factual allegations section appear to be irrelevant to Plaintiffs' claims. In both filings, Plaintiffs' legal claims in Counts 1, 2, and 3 offer largely conclusory statements that Defendants are liable. Plaintiffs do refer back to alleged facts in relation to certain elements of those claims, but they offer little clarity on which of the copious factual allegations support other elements and instead incorporate all their factual allegations by reference. (*See* Am. Compl. ¶¶ 424–56; Prop. SAC ¶¶ 458–500.) In both their amended complaint and

proposed second amended complaint, Plaintiffs have failed to "state their claims in an understandable and efficient manner." *Long v. New River Valley Cmty. Servs. Pact Program*, No. 7:19-CV-00171, 2019 WL 758608, at *1 (W.D. Va. Feb. 20, 2019) (quoting *Stone v. Warfield*, 184 F.R.D. 553, 555 (D. Md. 1999)).

In several cases, courts in the Fourth Circuit have held that complaints did not comply with Rule 8 even when they were far more concise than the pleadings here. *See, e.g.*, *McGuirt*, 114 F. App'x at 558 (affirming dismissal of complaint that contained 20 pages of factual allegations "filled with needless details" because it was "virtually impossible to separate the legally significant from the legally insignificant facts" in the background section and then match them with the relevant legal claims); *Cook*, 2015 WL 5690976, at *6 (holding that complaint failed to meet Rule 8 requirements when it contained 52 pages of factual allegations and "the court and the defendant [had] to guess as to which facts concern which claims"); *Holt v. Stroman*, No. 3:12–CV–03539, 2015 WL 1061990, at *3 (D.S.C. Mar. 11, 2015) (dismissing a complaint that alleged ten causes of action against 22 defendants over 53 pages because it offered only "conclusory statements, outline[d] the relevant law with only vague allusions to the alleged facts, [and] mentioned a few facts that still [fell] far short of showing how [the defendants'] actions [met] the elements of the causes of action alleged"); *Negron–Bennett v. McCandless*, No. 1:13–CV–387, 2013 WL 5552236, at *3 (E.D. Va. Oct. 8, 2013) (dismissing a complaint containing around 205 numbered paragraphs that included a "disorienting mix of allegations with relevant facts, irrelevant facts, disjointed narrative, conclusory accusations, and legal argument written in a highly confusing manner"); *Stone*, 184 F.R.D. at 555 (dismissing a 158-page complaint that alleged "a tangled web of

conclusory accusations that frequently fail to correspond with any supporting facts" and thus "place[d] an unfair burden on the defendants and this Court to attempt to determine which claims have merit").

Like the pleadings in those cases, Plaintiffs' amended complaint and proposed second amended complaint unjustifiably burden Defendants and the court by requiring them "to constantly cross-reference the factual narrative section and 'wade indeterminately through the morass of superfluous detail'" when evaluating Counts 1–3. *Negron–Bennett*, 2013 WL 5552236, at *3 (quoting *McGuirt*, 114 F. App'x at 559). The fact that Claude Convisser is an attorney only reinforces this conclusion. Complaints drafted by attorneys are held to a higher standard than those filed by non-attorney *pro se* litigants. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Stone*, 184 F.R.D. at 555 ("*Pro se* plaintiffs . . . are generally given more leeway [in complying with Rule 8(a)] than parties represented by counsel."). Indeed, courts have held *pro se* complaints failed to comply with Rule 8 even when they were far more concise than the pleadings Plaintiffs have filed and proposed here. *See, e.g.*, *Cook*, 2015 WL 5690976, at *5–6.

Although Plaintiffs' allegations related to Counts 1, 2, and 3 do not conform to Rule 8's pleading requirements, the court will proceed to analyze whether Plaintiffs have alleged sufficient facts in support of those three counts.

    2.  <u>Counts 1, 2, and 3 do not state a plausible claim for relief.</u>

Counts 1, 2, and 3 appear in both the amended complaint and the proposed second amended complaint, and the latter includes significantly more factual allegations to support them. Because the futility analysis for proposed amendments mirrors the Rule 12(b)(6)

analysis, *see In re Triangle Cap. Corp.*, 988 F.3d at 750, the court will focus on whether the proposed second amended complaint states plausible claims for relief. If a claim in the proposed second amended complaint is legally insufficient, it follows that the less-inclusive corresponding claim in the amended complaint should also be dismissed. However, the court emphasizes that it has independently reviewed the allegations in the amended complaint to confirm its conclusions. The court concludes that Counts 1, 2, and 3, as alleged in both the amended complaint and proposed amended complaint, all fail to state a plausible claim for relief under Rule 12(b)(6).

     i.   *Count 1: Virginia Statutory Business Conspiracy*[5]

Count 1 alleges a claim for business conspiracy in violation of Va. Code § 18.2-499 and § 18.2-500. In relevant part, § 18.2-499 makes it unlawful for "[a]ny two or more persons [to] combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever." Va. Code Ann. § 18.2-499(A). It also prohibits "attempts to procure the participation, cooperation, agreement or other assistance of any one or more persons to enter into any combination, association, agreement, mutual understanding or concert" prohibited by the statute. *Id.* § 18.2-499(B). Section 18.2-500 authorizes civil actions for violations of § 18.2-499 and permits plaintiffs to recover treble damages. *Id.* § 18.2-500(A).

---

[5] Count 1 is alleged against all Defendants and proposed Defendants except James L. Bicksel and Family Heritage Trust Company. (*See* Prop. SAC at 196.)

To establish a violation of § 18.2-499, a plaintiff must show "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff[s] in [their] business[;] and (2) resulting damages to plaintiff[s]." *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014). The first element requires proof by clear and convincing evidence that the conspirators acted with "legal malice"—that is, that they acted "intentionally, purposefully, and without lawful justification." *Id.* "Because there can be no conspiracy to do an act that the law allows," a plaintiff bringing a statutory conspiracy claim must allege some unlawful act or unlawful purpose. *Id.*

Here, Plaintiffs have not alleged facts that support a reasonable inference that any Defendant combined with other persons for the purpose of willfully or maliciously damaging Plaintiffs' business or induced others to do the same. The alleged conspiracy is built on far-fetched and speculative allegations that Exxon, its "intelligence and security agents," and/or the Mafia directed and conspired with the other individual Defendants to take various actions to harm Plaintiffs' business. (*See, e.g.*, Prop. SAC ¶ 90 (alleging that Hunter Wyant and Charles Pinnell "advised the New York Mafia and intelligence and security service of defendant Exxon Mobil to recruit defendant Keith Ford to their cause against plaintiffs"); *id.* ¶ 85 (alleging that the Mafia directed Keith Ford "on how to maneuver and dispossess [Claude Convisser of] investment opportunity"); *id.* ¶ 227 (alleging that Linden House permitted Exxon to monitor the relations between Claude Convisser and his parents "to further [Exxon's] malign objectives"). Plaintiffs do not identify any facts plausibly suggesting that any Defendant entered an agreement with Exxon, Exxon's unnamed security and intelligence agents and/or the Mafia for the purpose of injuring

Plaintiffs' business interests. They also fail to allege facts to support a reasonable inference that any other Defendants combined with one another to harm POP Diesel Africa. (*See, e.g.*, *id.* ¶¶ 622–23 (alleging, without factual support, that Julie Convisser conspired with Kathi Ayers, Jennifer McManus, and James Bicksel to have Martin Convisser declared incapacitated and to restructure the Convisser family's trusts to cut off financial support for Claude Convisser).

Plaintiffs also fail to demonstrate that any of the alleged conspirators acted with legal malice. *Dunlap*, 754 S.E.2d at 317. They allege that members of the "business conspiracy acted by unlawful means throughout by relying on unlawful electronic surveillance of plaintiffs." (Prop. SAC ¶ 465; *see also id.* ¶ 4 ("Sweeping, unlawful electronic surveillance of plaintiffs since 2016 organized by defendant Exxon Mobil's intelligence and security services and the New York biodiesel Mafia has been the unlawful means enabling all groups of defendants to accomplish their harmful acts against plaintiffs.").) Plaintiffs' allegations of unlawful surveillance are conclusory and lack factual support. (*See, e.g.*, *id.* ¶ 74 (alleging that each Defendant in the Albemarle County Group "rel[ied] on the means of unlawful electronic surveillance" to "accomplish the unlawful purpose of misappropriating [POP Diesel Africa's] trade secrets"); *id.* ¶ 154 (alleging that Defendants in the North American Spiritual Group were responsible for installing an "electronic surveillance system" in temples).

Because Plaintiffs have not alleged sufficient facts to support the necessary elements of a Virginia statutory conspiracy claim, the court will dismiss Count 1 and deny their proposed amendment as futile.

- 20 -

ii.   *Count 2: RICO Act*[6]

Count 2 seeks civil relief under the federal RICO Act, 18 U.S.C. §§ 1961–1968.

Plaintiffs allege that Defendants:

- Participated as principals in a "pattern of racketeering activity," received income derived from that activity, and used or invested that income to establish or acquire an interest in an "enterprise" engaged in or affecting interstate commerce (18 U.S.C. §1962(a));

- Acquired or maintained an interest in or control of an enterprise through a pattern of racketeering activity (§ 1962(b));

- Were "employed by or associated with an[] enterprise" and "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity" (§ 1962(c)); or

- Conspired to participate in an enterprise's racketeering activity (§ 1962(d)).

(Prop. SAC ¶ 474.)   A RICO claim alleging a violation of § 1962(c) must sufficiently plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" to survive a 12(b)(6) motion.  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Plaintiffs allege that a handful of Defendants took or were promised an ownership interest in the overall RICO "enterprise" orchestrated by Exxon and its security and intelligence agents.   (Prop. SAC ¶ 475.)   They allege that the remaining Defendants conspired to participate, either directly or indirectly, in a RICO enterprise.   (*Id.*)   And they claim that some unidentified conspirators received income from a pattern of racketeering activity, presumably to invest in the broader conspiracy against Plaintiffs.   (*Id.*)

---

[6] Count 2 is alleged against all Defendants and proposed Defendants except Charles Steppe and Family Heritage Trust Company.  (Prop. SAC at 199.)

For several reasons, Plaintiffs do not state a plausible RICO claim against any Defendant. To start, they have not sufficiently alleged that Defendants were part of a cognizable "enterprise," which is a required element of RICO participation and conspiracy claims. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *United States v. Devine*, 40 F.4th 139, 150 (4th Cir. 2022). A RICO "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Here, Plaintiffs claim that Defendants formed several association-in-fact enterprises, which require evidence of "an ongoing organization, formal, or informal" in which "the various associates function as a continuing unit." *Palmetto State Med. Ctr. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997). An association-in-fact enterprise must have at least three necessary features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *United States v. Pinson*, 860 F.3d 152, 161 (4th Cir. 2017) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

As the court has already discussed, Plaintiffs have not identified any non-speculative, non-conclusory facts showing that any Defendants formed relationships—either with Exxon, Exxon's unidentified security and intelligence agents, the Mafia, or with other Defendants in smaller groups—for the purpose of thwarting POP Diesel Africa's business ventures. While Plaintiffs attribute a wide swath of events and injuries to the conspiracy engineered by Exxon, they offer only implausible or conclusory allegations that any Defendants ever formed the relationships or purpose necessary to establish a RICO

enterprise. *See Nunes v. Fusion GPS*, 531 F. Supp. 3d 993, 1007–08 (E.D. Va. 2021) ("[M]ere conclusory language that Defendants and supposed enterprise participants operated as a RICO enterprise fails to satisfy the requirements of Rule 12(b)(6)." (internal quotation marks omitted)).

Plaintiffs' RICO claims also fail as a matter of law for other reasons. In addition to establishing an "enterprise," a plaintiff alleging a RICO conspiracy must show "that each defendant knowingly and intentionally agreed with another person to conduct or participate in the affairs of the enterprise" and "that each defendant knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering activities." *Devine*, 40 F.4th at 150. In other words, each conspirator must share "the same criminal objective." *Pinson*, 860 F.3d at 161 (quoting *Salinas v. United States*, 522 U.S. 52, 63–64 (1997)). Again, Plaintiffs have not identified any non-speculative and non-conclusory facts that support a reasonable inference that any Defendant knowingly agreed to participate in an enterprise that targeted Claude Convisser and POP Diesel Africa.

Plaintiffs identify numerous alleged predicate acts to show "a pattern of racketeering activity," from burglaries, theft, arson, kidnappings, and assaults to the murder of a Ghanian president. But the facts alleged in the two pleadings do not plausibly suggest that Exxon or any other Defendant actually committed those predicate acts—the accusations are entirely speculative and often quite far-fetched. In other places, Plaintiffs allege Defendants' involvement in predicate acts, such as marijuana trafficking, that have no plausible causal connection to any injury to Plaintiffs' "business or property"—let alone to the *$100 billion* loss in investment that Plaintiffs allege. *Nunes*, 531 F. Supp. 3d at 1005.

Accordingly, the court will dismiss Count 2 of the amended complaint and deny Plaintiffs' proposed amendment as futile.

    iii.  *Unjust enrichment*

Count 3 alleges a claim for unjust enrichment against four unnamed companies that allegedly competed with POP Diesel Africa and asks the court to impose a constructive trust on unspecified assets held by those companies. (Prop. SAC ¶¶ 487–92.)

Under Virginia law, unjust enrichment "'is an implied contract action based upon the principle' that one may not 'enrich himself unjustly at the expense of another.'" *LCF Grp., Inc. v. Piedmont Power Sports, Inc.*, 688 F. Supp. 3d 323, 330 (W.D. Va. 2023) (quoting *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E.2d 183, 190 (Va. 2018)). An unjust enrichment claim has three elements: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value." *James G. Davis Constr. Corp. v. FTJ, Inc.*, 841 S.E.2d 642, 650 (Va. 2020) (citing *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 838 (Va. 2008)). Because an action for unjust enrichment "is grounded in equitable principles," "courts have read into the third element the requirement that the defendant's acceptance or retention of the benefit be under 'circumstances that render it inequitable for the defendant to retain the benefit without paying for value.'" *Nat'l Funding, Inc. v. Modern Renovations, LLC*, 712 F. Supp. 3d 733, 740 (W.D. Va. 2024) (quoting *LCF Grp.*, 688 F. Supp. 3d at 331).

Plaintiffs' unjust enrichment claim rests on allegations that the unnamed companies were formed and "gained investment or finance based on having acquired sensitive,

confidential, proprietary trade secret information from plaintiff POP Diesel by misappropriation or fraudulent means," including by "unlawful electronic surveillance of plaintiffs." (Prop. SAC ¶¶ 488–91.) The claim fails as a matter of law because Plaintiffs have not plausibly alleged that any Defendant committed such fraud, misappropriation, or surveillance and funneled any pilfered information to a competitor company. Plaintiffs claim, without factual support, that certain Defendants formed the unnamed companies to copy and displace POP Diesel Africa or convinced investors to invest in the companies rather than POP Diesel Africa. (*See, e.g., id.* ¶¶ 117–18, 124–25, 156, 174—75, 204, 381, 483.) These allegations, and the allegations that certain Defendants stole or misappropriated information to share with the companies, appear to rest on nothing more than speculation and are too conclusory to support an unjust enrichment claim.

Accordingly, the court will dismiss Count 3 and deny Plaintiffs' proposed amendment to this count as futile.[7]

\* \* \*

In sum, Plaintiffs' legal claims and factual allegations related to Counts 1, 2, and 3, in both the amended complaint and proposed second amended complaint, fail to withstand Rule 12(b)(6) scrutiny. The court will dismiss Counts 1, 2, 3 of the amended complaint and deny Plaintiffs' proposed amendments as futile as to those counts.

---

[7]  In Count 3 of their proposed second amended complaint, Plaintiffs add separate unjust enrichment claims against James Cox and proposed Defendants MichieHamlett and Family Heritage Trust Company. (Prop. SAC ¶¶ 493–500.) The claim first focuses on the alleged payment of legal fees to Cox and MichieHamlett from the Martin Convisser Trust during this litigation. Plaintiffs allege that the payment was inequitable and seek reimbursement of the fees to the Martin Convisser Trust. Plaintiffs also claim that the Family Heritage Trust Company, the acting Trustee for some of the Convisser family's trusts, "is no longer qualified to hold and use for any purpose $15,000 designated from and for these Trusts in its accounts" because Claude Convisser repudiated the trusts. (Prop. SAC ¶ 497.) These proposed claims are conclusory, difficult to decipher, and fail to state a plausible claim for unjust enrichment. Thus, the court will deny these proposed amendments to Count 3 as futile.

While the court has not previously dismissed any of Plaintiffs' claims, "district courts are not required to give plaintiffs one without-prejudice ruling on the merits before dismissing with prejudice." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 196 (4th Cir. 2022); *see Abdul-Mumit v. Alexandria-Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018). "District courts have inherent power to manage their dockets with an eye toward speedy and efficient resolutions, and part of that power is the use of with-prejudice dismissals." *Nicholson*, 42 F.4th at 196 (citation omitted).

Dismissal with prejudice is warranted for Counts 1, 2, and 3. Plaintiffs have now had several opportunities to rework and address deficiencies in their complaint yet failed to do so. They amended their complaint as a matter of right after several Defendants moved to dismiss their original complaint. Defendants' earlier motions to dismiss put Plaintiffs on notice of key deficiencies in Counts 1 and 2, and Plaintiffs' amended complaint does not correct those deficiencies. Plaintiffs also have filed multiple "corrections" to their amended complaint, as well as multiple versions of the proposed second amended complaint attached to their motion for leave to amend. Their latest proposed complaint is 260 pages long and contains exhaustive factual allegations, yet still falls far short of stating a plausible claim in Counts 1, 2, or 3. When evaluating these counts, the court has reviewed the parties' extensive briefing on Defendants' eleven motions to dismiss the amended complaint, as well as on Plaintiffs' motions for leave to amend. *See MSP Recovery Claims, Series LLC v. Lundbeck LLC*, -- F.4th --, 2025 WL 610305, at *12 (4th Cir. 2025) (affirming a with-prejudice dismissal where the district court had reviewed "extensive briefing" on defendants' motions

to dismiss). Thus, based on the substantial filing history as well as extensive briefing in this case, the court will dismiss Counts 1, 2, and 3 with prejudice.

**B.  State-Law Claims Related to Conviser Family Disputes (Counts 4–10)**

The remaining counts in Plaintiffs' amended complaint and proposed second amended complaint allege state-law claims related to the care of the Conviser parents or the management of the Conviser family's trusts. Plaintiffs allege that the court can exercise diversity jurisdiction over these claims.[8] (Am. Compl. ¶ 15.) For purposes of resolving the pending motions, the court will group these claims into two categories. The first category includes just one count, Count 9, which alleges a claim for actual and constructive fraud and undue influence against Kathi Ayers, Jennifer McManus, and James Bicksel. The second category of claims—which consists of Counts 4–8 and proposed Count 10—are alleged against Julie Conviser only or against Julie Conviser, the three Linden House companies (Linden House, LLC, WIAL, LLC, and Cambridge Healthcare Holdings, LLC), James Cox, and proposed Defendants MichieHamlett and "John Doe Hospice Care Provider."

1.  <u>Fraud and undue influence claims against Kathi Ayers, Jennifer McManus, and James Bicksel (Count 9)</u>

Count 9 alleges claims for actual fraud and constructive fraud against Kathi Ayers, Jennifer McManus, and James Bicksel. (Prop. SAC ¶ 618–63.) Plaintiffs claim that Ayers, McManus, and Bicksel conspired with Julie Conviser to have Martin Conviser declared legally incapacitated and cut off Claude Conviser's financial support from the family's trusts. Ayers, McManus, and Bicksel have moved to dismiss these claims under Rule

---

[8] The Defendants named in these counts do not argue that Plaintiffs fail to satisfy the diversity-of-citizenship requirement in 28 U.S.C. § 1332. (*See* Dkt. 126.)

12(b)(6). Plaintiffs' proposed second amended complaint adds claims for undue influence to Count 9 and adds Julie Convisser as a defendant to the fraud and undue influence claims. (*Id.*) She opposes that amendment. (*See* Dkt. 184.)

"Under Virginia law, to prevail on an 'actual fraud' claim, a plaintiff must prove: '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'" *Harrell v. DeLuca*, 97 F.4th 180, 186 (4th Cir. 2024) (quoting *Evaluation Rsch. Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)).

Constructive fraud "differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently." *Alequin*, 439 S.E.2d at 390. "The elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005) (internal quotation marks omitted). To establish constructive fraud, a plaintiff also must show by "clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation." *Alequin*, 439 S.E.2d at 390.

Finally, undue influence is a "species of fraud" that provides an equitable ground for setting aside a contract. *Friendly Ice Cream Corp. v. Beckner*, 597 S.E.2d 34, 38 (Va. 2004). To establish undue influence, a plaintiff must show that "the free agency of the contracting party has been destroyed." *Id.* The Supreme Court of Virginia applies a presumption that a

transaction was the result of undue influence when the plaintiff presents clear and convincing evidence that the contracting party had "great weakness of mind" combined with the presence of "grossly inadequate consideration or suspicious circumstances." *Id.*

Federal Rule of Civil Procedure 9(b) requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). That is, a plaintiff must plead "the time, place, and contents of the false representations" and "the identity of the person making the misrepresentation and what he obtained thereby" under the Rule. *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) (citation omitted). Rule 9(b) "ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of," "protect[s] defendants from frivolous suits," seeks to "eliminate fraud actions in which all the facts are learned after discovery," and "protects defendants from harm to their goodwill and reputation." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

The court concludes that Plaintiffs have not alleged a plausible claim for actual fraud, constructive fraud, or undue influence against Bicksel, Ayers, McManus, or Julie Convisser.[9]

    i.   *James Bicksel*

James Bicksel is the neurologist who examined Martin Convisser, concluded he had Alzheimer's type dementia," and authored an August 18, 2021 letter finding that he lacked

---

[9] Some of these Defendants also argue that Plaintiffs lack Article III standing to bring these claims because they are premised on alleged injuries to Martin Convisser, and Claude Convisser may not assert his father's legal rights or interests. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (holding that a plaintiff, to establish standing, "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). While Claude Convisser lacks standing to vindicate his father's rights, Count 9 alleges that Claude Convisser also suffered financial injuries as a result of the fraud. The court therefore will dismiss Count 9 for failure to state a claim rather than for lack of subject matter jurisdiction.

the capacity to make informed decisions regarding his medical care or administration of property. (Prop. SAC ¶ 255, 620, 657.) Plaintiffs do not clearly identify which cause(s) of action they intend to allege against Bicksel, but they appear to rely on theories of actual and constructive fraud.

These claims fail to withstand Rule 12(b)(6) scrutiny. Plaintiffs claim that Bicksel's diagnosis of Martin Convisser and capacity determination were "false" and either "negligent or purposefully misleading." (Prop. SAC ¶ 657.) But they do not allege any facts that plausibly support that conclusion. Instead, Plaintiffs largely rely on a conclusory accusation that Bicksel was conspiring with Julie Convisser and others in the alleged business conspiracy to support their "malign purposes," without attempting to show that Bicksel had any knowledge of that alleged conspiracy. (*Id.*) Plaintiffs also allege that Bicksel made the diagnosis without reviewing all of Martin Convisser's medical records (including some that post-dated his letter) and scheduled an unnecessary follow-up appointment with him after August 18, 2021, but neither of those alleged facts supports a reasonable inference that Bicksel knowingly or negligently misstated Martin Convisser's health condition on August 18, 2021.

ii. *Kathi Ayers*

Kathi Ayers is an attorney who drafted trust documents for the Convisser family. (*Id.* ¶ 619.) Plaintiffs allege that Ayers committed actual fraud and exercised undue influence over Martin Convisser. (*Id.* ¶¶ 499, 627.)

These claims against Ayers also fail as a matter of law. Plaintiffs assert that Ayers, when she drafted the Convisser family's trust documents, intentionally concealed material

terms from Martin Convisser "with the malign intent to mislead him" into agreeing to a framework that would (1) deprive him of his control over the trusts upon his incapacitation and (2) allow Julie Convisser to conceal the trusts' assets and cut off financial support for Claude Convisser, thereby advancing the broader business conspiracy against Plaintiffs. (*Id.* ¶¶ 622–23, 629, 632–33.) They also claim, without any factual support, that Ayers knew Julie Convisser planned to procure a physician's letter declaring Martin Convisser incapacitated and later fraudulently revised the terms of the Martin Convisser Trust in January 2022. (*Id.* ¶¶ 499, 633.) Plaintiffs do not offer any non-speculative facts suggesting that Ayers deceived Martin Convisser or formed an agreement with Julie Convisser to do so. Their conclusory allegations do not satisfy the plausibility standard.

   iii. *Jennifer McManus*

   Jennifer McManus is an attorney who previously served as the Trustee for the Convisser Family Trust and Claude Convisser Trust. (*Id.* ¶¶ 252, 619.) She advised Martin Convisser that the trusts changed from revocable to irrevocable once Martin Convisser was found legally incapacitated. (*See id.* ¶ 643.) Plaintiffs allege claims for actual and constructive fraud against McManus based on those events. (*Id.* ¶ 642.) The claims are premised on an allegation that McManus "knew from others in the business conspiracy"—or should have known—that the Bicksel letter stated a false conclusion about Martin Convisser's capacity to make informed decisions about his financial and other affairs. (*Id.* ¶ 643.)

   Plaintiffs' pleadings do not allege sufficient facts to state an actual or constructive fraud claim against McManus. Even if McManus's statements interpreting the trust documents qualified as statements of fact rather than opinion, the complaint does not

contain any plausible, non-conclusory allegations that she knowingly or negligently made false representations. Plaintiffs claim that McManus knew Bicksel was not Martin Convisser's "attending physician" and thus could not make an incapacity determination under the terms of the Convisser Family Trust Agreement. (*Id.* ¶¶ 645–47.) They also suggest that McManus's own interactions with Martin Convisser would have shown her that Bicksel's incapacity determination was false, such that she was at least negligent in relying on his determination. (*Id.* ¶ 649.) Neither of those allegations supports a reasonable inference that McManus acted with the required mental state. No alleged facts suggest that McManus had any reason to believe Bicksel was not Martin Convisser's attending physician, and the allegations about McManus's impressions of Martin Convisser's cognition call for nothing but speculation.

            iv.  *Julie Convisser*

The proposed second amended complaint names Julie Convisser as an additional defendant in Count 9. It is not entirely clear which fraud claims Plaintiffs intend to allege against her, but they appear to focus on undue influence. Plaintiffs assert that Julie Convisser, along with Ayers, "took advantage of their relationship of privity" with Martin Convisser to make it easier to terminate Claude Convisser's financial support from the trusts, (*id.* ¶ 624), and took advantage of Martin Convisser's legal incapacitation to defy his intentions for the trusts and his will and benefit themselves, (*id.*).

These allegations, like the others, are too conclusory to support a reasonable inference of undue influence or other fraud. At bottom, Plaintiffs accuse Julie Convisser of conspiring with Bicksel, Ayers, and McManus to have Martin Convisser declared legally

incapacitated so they could begin cutting Claude Convisser off from the family's financial support, with the ultimate goal of thwarting POP Diesel Africa's business. No alleged facts plausibly support the existence of such a conspiracy.

*       *       *

Because Plaintiffs have failed to state a claim for actual fraud, constructive fraud, or undue influence against Julie Convisser, Bicksel, Ayers, or McManus, the court will dismiss Count 9 and deny Plaintiffs' proposed amendment to this count as futile. As with Counts 1–3, the court will dismiss the claims in Count 9 with prejudice. Plaintiffs have alleged extensive facts in relation to Count 9, and the court has reviewed three different motions to dismiss and extensive briefing on this count. Given these facts, the court does not believe that further amendment would correct the plain deficiencies in Plaintiffs' allegations of fraud and undue influence. *See MSP*, 2025 WL 610305, at *12.

2. Claims against Julie Convisser, the Linden House companies, James Cox, and MichieHamlett

Counts 4, 5, 6, and 8 allege state-law claims against Julie Convisser only. Count 4 petitions the court to review the power of attorney Julie Convisser exercises for one or both Convisser parents under Virginia's Uniform Power of Attorney Act, Va. Code § 64.2-1600 *et seq*. Count 5 alleges that Julie Convisser breached the terms of the Convisser Family Trust Agreement. Count 6 petitions the court under Va. Code § 64.2-2000 *et seq*. to appoint Claude Convisser as his parents' legal guardian and to appoint a third party as conservator of the Convisser parents' estate and financial affairs. And Count 8 alleges that Julie Convisser, while serving as Trustee for the Martin Convisser Trust, breached her fiduciary duty to Claude Convisser.

Counts 7 and 10 request two different forms of injunctive relief. Count 7 seeks an injunction barring Julie Convisser, the Linden House companies, James Cox, MichieHamlett, and an unnamed "John Doe Hospice Care Provider" from continuing to make health care decisions on the Convisser parents' behalf. Count 10, which appears only in the proposed second amended complaint, is alleged against the same named Defendants. It asks the court to enjoin Julie Convisser from prohibiting Claude Convisser from visiting his parents at Linden House.

The named Defendants collectively move to dismiss Counts 4–7 for lack of subject matter jurisdiction. (*See* Dkt. 127 at 8–12.) They have not moved to dismiss these counts under Rule 12(b)(6) for failure to state a claim. Julie Convisser has not moved to dismiss Count 8 on any ground.

      i.   *Petition to appoint guardian and conservator, petition to review power of attorney, and related request for injunctive relief (Counts 4, 6, and 7)*

Defendants ask the court to decline to exercise subject matter jurisdiction over Counts 4–7 based on recognized exceptions to federal diversity jurisdiction. (*See* Dkt. 127 at 11–12.) The court concludes that Counts 4, 6, and 7 should be dismissed without prejudice based on the "domestic relations exception" to federal diversity jurisdiction.

"[T]here are two subject areas, domestic relations and probate, in which the federal courts have refused to adjudicate various disputes even though the requirements for diversity jurisdiction are present." *In re Whatley*, 396 F. Supp. 2d 50, 55 (D. Mass. 2005) (quoting 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3609 (3d ed. 1998)). The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689,

- 34 -

703 (1992).  The probate exception is a similarly narrow limitation on diversity jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 307–08 (2006).  It "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate" and "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court."  *Id.* at 311–12; *see Lee Graham Shopping Ctr., LLC v. Estate of Kirsch*, 777 F.3d 678, 680–81 (4th Cir. 2015).

Several courts have held that claims challenging a state court's prior guardianship decision fall under either the domestic relations exception or probate exception.  *See, e.g., Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 859–60 (7th Cir. 2007) (Posner, J.); *Pizarro v. Sanchez-Munoz*, 554 F. Supp. 2d 138, 139 (D.P.R. 2008); *Mazur v. Woodson*, 932 F. Supp. 144, 148–49 (E.D. Va. 1996).  Here, Claude Convisser is petitioning for guardianship of and a conservatorship for his parents in the first instance—a state court has not previously appointed a guardian or conservator.  (Prop. SAC ¶ 561.)  Courts in several jurisdictions have held that the probate exception and/or domestic relations exception also apply to such petitions.  *See Cohen v. Coleman*, No. 2:24-cv-3054, 2024 WL 5046468, at *1–2 (E.D. Cal. Nov. 13, 2024); *Mello v. Webster*, No. CA 13-335ML, 2013 WL 2099497, at *3 (D.R.I. May 10, 2013); *Paulucci v. Paulucci*, No. 6:05-cv-1264, 2006 WL 8439352, at *4–6 (M.D. Fla. Jan. 20, 2006); *Whatley*, 396 F. Supp. 2d at 57–59; *see also Clapp ex rel. Moulton v. Indiana*, No. 09–cv–118, 2010 WL 1049932, at *5 n.2 (N.D. Ind. Mar. 16, 2010) ("The probate exception precludes federal courts from adjudicating disputes regarding matters reserved to state trial courts, including the appointment and deployment of a guardian."); *Lanier v. Lanier*, No. 7:22-CV-00075, 2024 WL 4219299, at *6 (E.D.N.C. Aug. 23, 2024) (collecting cases).

This court finds the reasoning in those decisions persuasive and concludes that Claude Convisser's petition for guardianship and conservatorship falls within the domestic relations exception to diversity jurisdiction. Strictly speaking, petitions for guardianship do not ask the court to "issue divorce, alimony, [or] child custody decrees." *Ankenbrandt*, 504 U.S. at 703. But as other courts have recognized, "[d]etermining whether to place custody of an incapacitated elderly person with a guardian . . . is analogous to determining whether to place custody of a child with a guardian instead of a parent." *Whatley*, 396 F. Supp. 2d at 58 (holding that a state-law petition for an order appointing a guardian for an elderly person fell within the domestic relations exception); *see also Paulucci*, 2006 WL 8439352, at *4–6 (drawing the same analogy to child custody cases to hold that a state-law petition seeking guardianship of an incapacitated person fell within the domestic relations exception); *see also Mazur*, 932 F. Supp. at 149 (stating that "guardianship of an adult because of mental illness or incapacity is analogous to child custody situations").

Further, "[t]he same prudential concerns supporting the domestic relations exception for divorce, alimony, and child custody cases apply equally in guardianship cases." *Mazur*, 932 F. Supp. at 149. When discussing the rationale behind the domestic relations exception, the Supreme Court has explained:

> As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees. Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees.

*Id.* (quoting *Ankenbrandt*, 504 U.S. at 704).

Virginia has adopted a detailed statutory framework governing court appointment
and supervision of guardians and conservators, which makes clear that state courts are much
better suited to handle petitions for guardianship or conservatorship. *See* Va. Code Ann.
§ 64.2-2000 *et seq.* The relevant statutes provide that a petition for the appointment of a
guardian or conservator shall be filed in a Virginia "circuit court," specify in which circuit
courts venue is proper, outline in detail the proceedings a court must hold before appointing
a guardian or conservator, and even instruct staff for the Supreme Court of Virginia to
provide circuit court clerks with instructions to give guardians and conservators upon their
appointment. *Id.* § 64.2-2001–§ 64.2-2009. The statute's definition of "petition" refers
specifically to "the document filed with a *circuit court* to initiate a proceeding to appoint a
guardian or conservator." *Id.* § 64.2-2000 (emphasis added). Other provisions governing
jurisdiction to appoint guardians or conservators similarly refer to "court[s] of the
Commonwealth." *Id.* §§ 64.2-2107, 64.2-2108. Among other provisions, the Virginia
statutes also enumerate the duties and powers of guardians and conservators, direct
guardians and conservators to file annual reports that are provided to circuit court clerks,
and require courts to hold periodic review hearings to determine whether a guardian or
conservator is fulfilling her duties and whether the arrangement remains necessary. *See id.*
§§ 64.2-2009.1, 64.2-2019, 64.2-2020–64.2-2022.

Federal courts are "ill-equipped to enter the highly-regulated realm of state
guardianship law." *Paulucci*, 2006 WL 8439352, at *5–6 (addressing Florida's similarly
comprehensive guardianship statute); *see also Whatley*, 396 F. Supp. 2d at 57 ("As a practical
matter, federal courts have little expertise in appointing guardians to handle the financial

assets and medical care of older persons.") The appointment of guardians and conservators for incapacitated persons is peculiarly within the expertise of Virginia state courts. Indeed, the parties have not cited—and the court is unaware of—any case in which a federal court has exercised jurisdiction over a state-law petition for guardianship or conservatorship. Declining to exercise federal jurisdiction over such petitions will "keep federal courts from meddling in a realm that is peculiarly delicate, that is governed by state law and institutions (e.g., family courts), and in which inter-court conflicts in policy or decrees should be kept to an absolute minimum." *Whatley*, 396 F. Supp. 2d at 58 (quoting *Norton v. McOsker*, 407 F.3d 501, 505 (1st Cir. 2005)). For these reasons, the court will dismiss Count 6 without prejudice.

The court also will dismiss Count 4 because it is closely bound up with Claude Convisser's petition for guardianship and conservatorship. Count 4 asks the court to terminate the power of attorney Julie Convisser exercises on behalf of one or both Convisser parents. Claude Convisser brings this claim under Virginia's Uniform Power of Attorney Act, which authorizes certain persons, including the child of a principal who delegated his or her power of attorney, to "petition a court to construe a power of attorney or review the agent's conduct, and grant appropriate relief." Va. Code Ann. § 64.2-1614(A). Claude Convisser's power-of-attorney and guardianship petitions are two sides of the same coin. He asks the court to terminate the power of attorney and/or advance healthcare directive that Julie Convisser exercises for their parents and to instead appoint him as their parents' legal guardian. (*See* Prop. SAC ¶¶ 520, 559.) He specifically requests that the court empower him to make medical, health care, and residential decisions for their parents and to

"exercise all of the functions and powers stated in the power of attorney [Julie Convisser] has been exercising agency of." (*Id.* ¶ 570.) And he asks that the guardianship and conservatorship take priority while the power of attorney and advance directive delegated to Julie Convisser remain in place. (*Id.* ¶ 571.) Because Count 4 is so closely linked to Claude Convisser's petition for guardianship and conservatorship, the court will not exercise subject matter jurisdiction over that claim. *See Paulucci*, 2006 WL 8439352, at *6 (declining to exercise diversity jurisdiction over claims "inextricably intertwined with the count seeking appointment of a guardian"). Count 4 will be dismissed without prejudice.

For the same reasons, the court also will dismiss Count 7. Count 7 asks the court to enter an injunction divesting Julie Convisser of any authority she exercises on behalf of her parents (either under an advanced directive or as an agent exercising their power of attorney) and instead vesting that authority in Claude Convisser "and his nominee for conservator." (Prop. SAC ¶¶ 601–02.) It further asks for injunctive relief barring the Linden House companies and James Cox "from further unlawful, tortious and unauthorized health care actions and decisions" relating to the Convisser parents and requiring these Defendants to (1) allow Claude Convisser to move his parents into another assisted living facility, (2) give him access to his parents' medical records, (3) transfer financial authority over his parents' affairs to him and a conservator, and (4) generally "deal with [Claude Convisser] as the legal guardian" of his parents. (*Id.* ¶¶ 603–04.) These requested forms of injunctive relief are inextricably linked to—and dependent on—the appointment of Claude Convisser as legal guardian for his parents and the appointment of a third-party conservator.

Finally, because the court will not exercise subject matter jurisdiction over Counts 4, 6, or 7, it will also dismiss Claude Convisser's renewed motion for a TRO (Dkt. 37). Convisser's TRO motion seeks, on an emergency basis, the same forms of injunctive relief he requests in Count 7.  The motion asks the court to suspend Julie Convisser from exercising their parents' power of attorney and advance medical directive and to transfer "full authority" to Claude Convisser and a conservator to serve the parents' residential, legal, and medical interests.  (*Id.* at 12–13.)  It further asks for injunctive relief authorizing Claude Convisser to move his parents to another assisted living facility, compelling Julie Convisser, the Linden House companies, and Cox to cooperate and pay for the move, and ordering discovery pursuant to Virginia's Uniform Power of Attorney Act.  (*Id.*)  Like the permanent injunctive relief requested in Count 7, these forms of temporary injunctive relief are inextricably linked to Claude Convisser's guardianship and conservatorship petition, which this court lacks subject matter jurisdiction to resolve.  Claude Convisser's arguments for a TRO underscore that this motion is inseparable from that petition.  When addressing the factors relevant to temporary injunctive relief, he asserts that he will suffer irreparable harm as his parents' "putative legal guardian" absent a temporary injunction.  (*Id.* at 14.)  These arguments and requests for relief are best deferred to and addressed by a state court.

> ii.  *Plaintiffs' remaining state-law claims (Counts 5, 8, and 10)*

Julie Convisser also moves to dismiss Count 5, the breach-of-contract claim, for lack of subject matter jurisdiction.  The court concludes that Count 5 does not fall within an exception to diversity jurisdiction and will deny Julie Convisser's motion to dismiss it.  Count 5 alleges that Julie Convisser breached the terms of the Convisser Family Trust Agreement

by refusing to make certain distributions to family trusts for Claude Convisser's benefit. (*See* Prop. SAC ¶¶ 521–43.) This claim turns on the meaning of terms in the Convisser Family Trust Agreement and whether Julie Convisser violated her duties as Trust Protector of the Convisser Family Trust. It is distinct from Claude Convisser's petition for guardianship and conservatorship and therefore may proceed.[10]

As noted above, Julie Convisser's motion to dismiss does not specifically address Count 8, the breach-of-fiduciary-duty claim. (*See* Dkt. 127 at 8–12.) That count, too, is distinct from Claude Convisser's guardianship and conservatorship petition. While it might well be more efficient for Convisser to try all his state-law claims in a single state-court proceeding, Counts 5 and Count 8 do not fall within the narrow exceptions to diversity jurisdiction.

Finally, the court will grant Plaintiffs leave to amend as to Count 5, Count 8 and proposed Count 10, which challenges Julie Convisser's authority to restrict Claude Convisser's access to the Linden House assisted living facility under Virginia's Health Care Decisions Act, Va. Code § 54.1-2981 *et seq.* Defendants do not identify any specific defects in these claims that would provide grounds for denying leave to amend as futile. (*See* Dkt. 132.) Instead, they argue that the amendments would be prejudicial and were offered in bad faith. (*See id.* at 4–5.) The court finds that granting Plaintiffs leave to amend as to Counts 5, 8, and 10 would not cause any undue prejudice. At this stage, discovery has not yet begun, Plaintiffs seek to add only one new cause of action, and only three counts will remain

---

[10] Defendants also ask the court to exercise discretion to decline supplemental jurisdiction over Count 5 based on the dismissal of the one federal-law claim (Count 2). But Plaintiffs do not rely solely on supplemental jurisdiction to bring their state-law claims. They separately allege that the court may exercise diversity jurisdiction over the state-law claims. (*See* Am. Compl. ¶ 15.)

pending against these Defendants, which will not result in any significant financial burden. *See, e.g.*, *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). The court also finds no evidence that Plaintiffs have acted in bad faith by proposing the amendments.

## IV.    Conclusion

For the reasons stated above, Counts 1, 2, 3, and 9 of Plaintiffs' amended complaint are **DISMISSED with prejudice** for failure to state a claim as to all Defendants who have moved to dismiss. Counts 4, 6, and 7 are **DISMISSED without prejudice** for lack of subject matter jurisdiction. Counts 5 and 8 of the amended complaint may proceed against Julie Conviser. Based on these conclusions, the court resolves the motions to dismiss as follows:

- The motion to dismiss filed by Cambridge Healthcare Holdings, LLC, Julie Marie Conviser (individually and as Trustee of the Martin Conviser Trust), James P. Cox, III, Linden House, LLC, and Wial, LLC (Dkt. 126) is **GRANTED** in part and **DENIED** in part. The motion is **DENIED** as to Counts 5 and 8 of the amended complaint and **GRANTED** as to all other counts.

- The motion to dismiss filed by John J. Davidson, Wende S. Duflon, and Hunter S. Wyant (Dkt. 124) is **GRANTED**. Davidson, Duflon, and Wyant are terminated as parties to this action.

- The motion to dismiss filed by Kathi Ayers (Dkt. 128) is **GRANTED**. Ayers is terminated as a party to this action.

- The motion to dismiss filed by David R. Butler (Dkt. 158) is **GRANTED**. Butler is terminated as a party to this action.

- The motion to dismiss filed by Jennifer C. McManus (Dkt. 162) is **GRANTED**. McManus is terminated as a party to this action.

- The motion to dismiss filed by Marcus T. Wiley, Keith Ford, Charles L. Pinnell, Ray W. Hughes, Elizabeth Ann Hughes, Emil Kutilak, Michael Laird, and Charles M. Steppe (Dkt. 164) is **GRANTED**. Wiley, Ford, Pinnell, Ray Hughes, Elizabeth Hughes, Kutilak, Laird, and Steppe are terminated as parties to this action.

- The motion to dismiss filed by Exxon Mobil Corporation (Dkt. 169) is **GRANTED**. Exxon Mobil Corporation is terminated as a party to this action.

- The motion to dismiss filed by Subramaniam Krishnan (Dkt. 220) is **GRANTED**. Krishnan is terminated as a party to this action.

- The motion to dismiss filed by Kenneth Edward Steben (Dkt. 222) is **GRANTED**. Steben is terminated as a party to this action.

- The motion to dismiss filed by Victor M. Glasberg (Dkt. 230) is **GRANTED**. Glasberg is terminated as a party to this action.

- The motion to dismiss filed by James L. Bicksel (Dkt. 233) is **GRANTED**. Bicksel is terminated as a party to this action.

Plaintiff Claude Convisser's renewed motion for a temporary restraining order (Dkt. 37) is **DISMISSED** for lack of subject matter jurisdiction.

Plaintiffs' motion for leave to take early depositions (Dkt. 32) is **DENIED**. Based on the representations in Plaintiffs' motion, most of the witnesses and parties they sought to depose would provide testimony relevant to claims that have now been dismissed. Plaintiffs may re-file a motion for leave to conduct early discovery, limited to discovery that is relevant to their surviving claims.

Plaintiffs' motions for leave to file a second amended complaint (Dkts. 117, 150, 151) are **GRANTED** in part and **DENIED** in part. Leave to amend is granted as to Counts 5 and 8 and proposed Count 10 only; leave to amend is denied as to all other counts. The court will grant leave for Plaintiffs to file a revised version of their second amended complaint that conforms to the pleading requirements in Rule 8, no later than 21 days of the date of this Memorandum Opinion and accompanying Order. Plaintiffs are not granted

leave to assert new factual allegations or legal claims in their second amended complaint, or those claims that this court previously dismissed with prejudice.

An appropriate Order will accompany this Memorandum Opinion.

ENTERED this 13th day of March, 2025.


HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE