CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

**10/15/2025**

LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Claude David Convisser | ) | |
| | ) | |
| and | ) | |
| | ) | |
| POP Diesel Africa, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3:24-cv-00072 |
| | ) | |
| v. | ) | |
| | ) | |
| Linden House, LLC *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendants' motion to dismiss Plaintiffs' second amended complaint (Dkt. 271), Plaintiffs' motion for leave to file a third amended complaint (Dkt. 262), Plaintiffs' motions for leave to file a supplemental memorandum and substitute updated versions of their proposed third amended complaint (Dkts. 266, 273, 285), Plaintiffs' motion to set aside a June 5, 2025 order granting in part Victor M. Glasberg's motion for sanctions (Dkt. 291), and Plaintiffs' third motion for leave to conduct early discovery (Dkt. 296). For the reasons that follow, the court will grant Defendants' motion to dismiss and deny Plaintiffs' motions.

### I.    Background

Plaintiff Claude David Convisser, representing himself and co-plaintiff POP Diesel Africa, Inc. as counsel, filed this action on September 9, 2024. Plaintiffs' amended complaint,

which was over 200 pages long, alleged that Exxon Mobil Corporation ("Exxon") and numerous other defendants participated in a sweeping conspiracy to harm Plaintiffs' alternative fuel business. In addition to alleging federal and state causes of action related to that purported conspiracy, the amended complaint asserted state-law claims challenging the care of Claude Convisser's elderly parents, Martin and Colette Marie Convisser, as well as claims related to the administration of certain trusts created by the Convisser family.

On March 13, 2025, this court entered a memorandum opinion and an order that resolved eleven motions to dismiss the amended complaint and Plaintiffs' motions for leave to file a second amended complaint. (Dkt. 249.) The court's memorandum opinion first addressed Plaintiffs' claims related to the purported business conspiracy, which alleged civil claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), civil conspiracy claims under Va. Code § 18.2-499 and § 18.2-500, and common-law claims for unjust enrichment. (*See* Mem. Op. at 14–25 (Dkt. 248).) The court held that the allegations offered in support of those claims failed to comply with Federal Rule of Civil Procedure 8's pleading standard and also failed to state any claim for relief under Rule 12(b)(6). (*Id.*) The claims rested on far-fetched, implausible, and often conclusory allegations that Exxon, shadowy "intelligence and security agents," and the "New York Biodiesel Mafia" directed and conspired with numerous persons to surveil Claude Convisser and harm his alternative fuel business in myriad ways. (*Id.* at 19.) The court dismissed the claims with prejudice after determining that further amendment would be futile. (*Id.* at 26–27.)

The court next addressed the state-law claims related to the care of the Convisser parents and the management of the Convisser family's trusts. (*See id.* at 27–42.) Those claims

alleged causes of action for fraud, undue influence, breach of contract, and breach of fiduciary duty; petitioned for the appointment of a guardian and conservator for the Convisser parents; asked the court to terminate the power of attorney that Julie Convisser, Claude Convisser's sister, exercises on behalf of the Convisser parents; and sought injunctive relief related to health care decisions for the Convisser parents. (*See id.*) The court dismissed most of those claims either for lack of subject matter jurisdiction or for failure to state a claim. (*See id.*) It granted Plaintiffs leave to file a second amended complaint limited to three state-law counts. (*Id.* at 40–42.) Those counts consist of (1) a claim for breach of contract against Julie Convisser; (2) a claim for breach of fiduciary duty against Julie Convisser; and (3) a claim for injunctive relief against Julie Convisser, Linden House, LLC, Wial, LLC, Cambridge Healthcare Holdings, LLC, and James P. Cox, III (for purposes of this opinion, "Defendants") for an alleged violation of the Virginia Health Care Decisions Act, Va. Code § 54.1-2986.1(A).[1] The breach-of-contract and breach-of-fiduciary-duty claims challenge Julie Convisser's management of the family trusts. The claim for injunctive relief under the Virginia Health Care Decisions Act alleges that Defendants have unlawfully restricted Claude Convisser's ability to visit his parents at the Linden House assisted living facility, where they currently reside.

Plaintiffs filed a second amended complaint against Defendants on April 3, 2025. (Second Am. Compl. (Dkt. 261).) Counts 1 and 2 allege the breach-of-contract and breach-of-fiduciary-duty claims against Julie Convisser, respectively. (*Id.* ¶¶ 13–58.) Count 3 seeks

---

[1] The claim alleging the violation of Va. Code § 54.1-2986.1(A) did not appear in Plaintiffs' amended complaint. Plaintiffs raised it for the first time in the proposed second amended complaint they attached to their motion for leave to amend.

injunctive relief for the alleged violation of Va. Code § 54.1-2986.1(A).  (*Id.* ¶¶ 59–77.)
Defendants moved to dismiss the second amended complaint under Rule 8(a) and Rule
12(b)(6).  (Dkts. 271, 272.)  Plaintiffs filed a response opposing the motion to dismiss, (Dkt.
284), and Defendants filed a reply.  (Dkt. 287.)

      The same day they filed their second amended complaint, Plaintiffs moved for leave to
file a third amended complaint.  (Dkts. 262, 262-1.)  Since then, Plaintiffs have asked the court
for leave to file a supplemental memorandum in support of that motion and to substitute three
different updated versions of their proposed third amended complaint.  (Dkts. 266, 273, 285.)
The most recent iteration is 156 pages long.  (*See* Dkt. 285-1.)  Each version of the proposed
third amended complaint includes both new and reworked allegations about the business
conspiracy led by Exxon, re-alleges some claims this court previously dismissed with prejudice,
and adds new, related causes of action against new defendants.  (*See* Dkts. 262-1, 267-1, 273-
1, 285-1.)  Defendants and Exxon filed responses opposing Plaintiffs' motion for leave to
amend.  (Dkts. 268, 270, 276.)  Plaintiffs filed a reply in support of their motion.  (Dkt. 285.)

      Plaintiffs have filed two other motions that are pending before the court.  One relates
to a motion for sanctions filed by a former defendant, Victor M. Glasberg, after the court
dismissed all claims alleged against him in the amended complaint.  On June 5, 2025, the
Honorable C. Kailani Memmer, United States Magistrate Judge, granted Glasberg's motion in
part.  (Dkt. 286.)  Plaintiffs filed a motion to set aside that order on June 12, 2025.  (Dkt. 291.)
Lastly, on August 26, 2025, Plaintiffs filed a third motion requesting leave to conduct early
discovery.  (Dkt. 296.)  Plaintiffs previously had filed two similar motions that the court denied.
(*See* Dkts. 249, 283.)  Defendants oppose Plaintiffs' latest motion for discovery.  (Dkt. 299.)

## II.    Defendants' Motion to Dismiss the Second Amended Complaint

Defendants argue that the second amended complaint fails to comply with Rule 8(a)'s pleading standard and also fails to state any plausible claim for relief.  Rule 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To survive a Rule 12(b)(6) motion, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).  To state a plausible claim, though, the complaint must allege more than "labels and conclusions" or "naked assertion[s]" unsupported by "further factual enhancement."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

In their opposition brief, Plaintiffs state that they do not oppose dismissal of Count 2, the breach-of-fiduciary-duty claim against Julie Convisser, and they ask the court to dismiss that claim without prejudice.  (Dkt. 284 at 12.)  Defendants argue that Counts 1, 2, and 3 all should be dismissed with prejudice.  (Dkt. 272 at 2.)  The court concludes that none of the three counts states a plausible claim for relief and will dismiss the second amended complaint with prejudice.

1.  Breach of contract (Count 1)

Count 1, the breach-of-contract claim, arises from Julie Conviser's roles relative to three trusts created by Claude and Julie Conviser's father, Martin Conviser: the Martin Conviser Trust, the Conviser Family Trust,[2] and the Claude Conviser Trust. Julie Conviser serves as Trustee of the Martin Conviser Trust. (Second Am. Compl. ¶ 13.) She also serves as "Trust Protector" of the Conviser Family Trust. (*Id.* ¶¶ 17–21; *see* Dkt. 37-20 at 2.) Family Heritage Trust Company is the Trustee for the Conviser Family Trust and for the Claude Conviser Trust, which is a subtrust of the Conviser Family Trust. (Second Am. Compl. ¶ 25; *see* Dkt. 37-20.) Claude Conviser is currently the sole beneficiary of the Conviser Family Trust and Claude Conviser Trust. (*Id.* ¶¶ 31, 36.)

The allegations in Count 1 focus on a "Letter of Acknowledgement of Advancement on Inheritance" that Julie Conviser sent Claude Conviser on July 19, 2024. Previously, Claude Conviser had received monthly payments of $3,000 from the Claude Conviser Trust. (*Id.* ¶¶ 37–38.) Julie Conviser made distributions from the Martin Conviser Trust to the Conviser Family Trust and Claude Conviser Trust during that period. (*Id.* ¶ 27.) The July 19, 2024 letter explained that Julie Conviser was prepared to transfer assets from the Martin Conviser Trust to the Claude Conviser Trust to provide for Claude Conviser's basic living expenses, but that the disbursement would be treated as an advancement on Claude Conviser's share of the inheritance of their parents' estate. (*Id.* ¶¶ 15, 33–35.) Julie Conviser

---

[2] Plaintiffs refer to both the "Conviser Family Trust" and the "Conviser Family Trust Agreement." (*See, e.g.*, Second Am. Compl. ¶ 17.) Both terms appear to refer to the same document, which Plaintiffs attached to an earlier motion in this case. (*See* Dkt. 37-20.) The court will refer to the document as the "Conviser Family Trust." The court may consider the document when reviewing Defendants' motion to dismiss Count 1 because the second amended complaint incorporates it by reference. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

informed Claude Convisser that their parents' wills and trusts state that he is to inherit half of the remainder of their estate upon their deaths, which will be provided exclusively through the Claude Convisser Trust. (*Id.* ¶ 15.) Julie Convisser told her brother that no further funds would be disbursed to the Claude Convisser Trust until he signed the letter. (*Id.* ¶ 35.)

Plaintiffs allege that Julie Convisser's actions violated her obligations as Trust Protector of the Convisser Family Trust. They rely on a provision in that trust instrument that states the "Trust Protector shall not participate in the exercise of a power or discretion conferred under this instrument for the direct or indirect benefit of [the] Trust Protector, [the] Trust Protector's estate, or the creditors of either." (*Id.* ¶ 23.) According to Plaintiffs, Julie Convisser breached that provision "by creating for herself a conflict of interest in the exercise of her discretion under . . . the Convisser Family Trust Agreement as to whether or not to transfer funds from . . . the Martin Convisser Trust to the Claude Convisser Trust by way of the Convisser Family Trust." (*Id.*) They assert that Julie Convisser "becomes the beneficiary of her exercise of discretion not to replenish the Trust Fund by thus reserving a greater share of their parents' estate for [her] inheritance." (*Id.* ¶ 35.)

Count 1 alleges that Julie Convisser breached her "contractual duties" as Trust Protector of the Convisser Family Trust. (*Id.* at 4.) That claim does not appear to be a cognizable cause of action under Virginia law. In a recent decision, the Supreme Court of Virginia explained that "[a] beneficiary's action against a trustee is properly brought as a claim for breach of fiduciary duty rather than as a breach of contract." *Boyle v. Anderson*, 871 S.E.2d 226, 229 (Va. 2022). It noted that "[t]he creation of a trust is conceived of as a conveyance of the beneficial interest in the trust property rather than as a contract." *Id.* at 228–29 (quoting

Restatement (Second) of Trusts § 197 cmt. B (1959)).  While Count 1 focuses on Julie Convisser's duties as a trust protector rather than as a trustee, those duties are grounded in the trust document itself, so the rule in *Boyle* would apply here with equal force.

Some courts applying Virginia law have recognized that a beneficiary to a trust may bring a cause of action against a trustee for breach of a trust agreement.  *See Broyhill v. Bank of Am., N.A.*, No. 1:10CV905, 2010 WL 3937400, at *5 (E.D. Va. Oct. 6, 2010) (citing *Rollins v. Branch Banking & Trust Co. of Va.*, 56 Va. Cir. 147, 151 (Va. Cir. Ct. 2001)).  That type of breach-of-trust claim does resemble a breach-of-contract action.  *See id.*  Virginia's Uniform Trust Code permits a court to award damages and other remedies for a breach of trust, which it defines as "[a] violation by a trustee of a duty the trustee owes to a beneficiary."  Va. Code Ann. § 64.2-792; *id.* § 64.2-793.

Plaintiffs do not allege a violation of such a duty here, as Julie Convisser is the Trust Protector—not the Trustee—of the Convisser Family Trust.  A third party, Family Heritage Trust Company, serves as Trustee of both the Convisser Family Trust and the Claude Convisser Trust.  (Second Am. Compl. ¶ 25.)  Plaintiffs do not cite any Virginia authority that addresses the fiduciary duties, if any, a trust protector owes to a trust beneficiary.  The Convisser Family Trust does not clearly address this question.  It does, however, include an express provision limiting the Trust Protector's liability.  That provision states that "[a]bsent bad faith," the "Trust Protector is exonerated from any and all liability . . . arising from any exercise or non-exercise of the powers and discretions conferred under this instrument."  (Dkt. 37-20 at 5.)

Even if the court construes Count 1 as a breach-of-trust claim and assumes that Claude Convisser may bring the claim, the second amended complaint does not sufficiently allege that Julie Convisser violated the terms of the Convisser Family Trust. For one, the allegations do not demonstrate that Julie Convisser was "exercis[ing] a power or discretion conferred" on the Trust Protector during the events in question. (*Id.* at 4.) In deciding whether to disburse funds from the Martin Convisser Trust to the Convisser Family Trust and Claude Convisser Trust, Julie Convisser was acting in her capacity as Trustee of the Martin Convisser Trust. Plaintiffs do not allege that she had any obligation as Trustee to make regular disbursements from the Martin Convisser Trust to those trusts. They also fail to show that the authority to make payments from the Claude Convisser Trust to Claude Convisser falls within the "power or discretion" Julie Convisser exercises as Trust Protector. In fact, the Convisser Family Trust expressly states that the Trust Protector "shall have no power to make distributions of income or principal to any beneficiary or to make any investment decisions regarding any property or assets held by this trust or any trust created under this instrument." (*Id.* at 4–5.)

Plaintiffs also allege that Julie Convisser intervened in the management of the Claude Convisser Trust's assets by "prevail[ing] on" Family Heritage Trust Company "to begin diminishing" his monthly payments starting in January 2024. (Second Am. Compl. ¶ 37.) Those alleged actions have at most an attenuated connection to Plaintiffs' alleged injuries. Again, the terms of the Convisser Family Trust make clear that Julie Convisser lacks the authority to decide the amount of funds to distribute to her brother. Rather, Family Heritage Trust Company, as Trustee, has "sole discretion" to distribute to Claude Convisser an amount it deems "appropriate to provide for his reasonable support, maintenance, and medical care."

- 9 -

(Dkt. 37-20 at 8.)  Family Heritage Trust Company has no obligation to make a particular monthly payment to him.  The trust instrument merely "request[s]" that the Trustee "make monthly distributions to or for the benefit of [Claude Convisser] to cover his housing and other basic living expenses and medical needs with the goal that the trust assets last for [his] lifetime, if possible." (*Id.*)  Finally, even if any of Julie Convisser's actions did fall within her power or discretion as Trust Protector, Plaintiffs have not sufficiently alleged that she acted with "bad faith," which is a prerequisite to liability under the trust instrument.[3]  (*Id.* at 5.)

Because Plaintiffs fail to state any plausible claim for breach of contract or breach of trust, the court will grant Defendants' motion to dismiss as to Count 1.

2.  Breach of fiduciary duty (Count 2)

Count 2 alleges that Julie Convisser committed a breach of trust and breached her fiduciary duties as Trustee of the Martin Convisser Trust by refusing to give Claude Convisser a copy of the trust instrument and withholding financial information about the trust.  (Second Am. Compl. ¶¶ 47, 49–50.)  It also alleges that she is withholding other legal documents signed by the Convisser parents, including their last will and testament, confirmation of the power of attorney she exercises on Martin Convisser's behalf, and potentially an advance medical directive.  (*Id.* ¶ 46.)

To demonstrate a breach of fiduciary duty under Virginia law, a plaintiff must show (1) a fiduciary duty; (2) breach; and (3) damages caused by the breach.  *See Moore v. Law Offices of Shapiro, Brown & Alt, LLP*, No. 3:14cv832, 2015 WL 4877845, at *7 (E.D. Va. Aug. 13, 2015)

---

[3] Plaintiffs allege that Julie Convisser also halted a $500 monthly payment to Claude Convisser that came from separate assets and accounts belonging to the Convisser parents.  (Second Am. Compl. ¶ 38.)  That action appears to be unrelated to the administration of the Convisser family's trusts and does not support Plaintiffs' claim in Count 1.

(citing *Carstensen v. Chrisland Corp.*, 442 S.E.2d 660, 666 (Va. 1994)).  The second amended complaint alleges that Claude Convisser is either a named or "intended" beneficiary of the Martin Convisser Trust, so Julie Convisser, as Trustee, owed him fiduciary duties.  (Second Am. Compl. ¶¶ 41–42.)  Assuming that Claude Convisser is in fact a beneficiary of that trust, Count 2 still does not state a plausible breach-of-trust or breach-of-fiduciary-duty claim.  For starters, Plaintiffs do not explain how Julie Convisser's fiduciary duties as Trustee required her to disclose the legal documents that are not directly related to the Martin Convisser Trust.  Nor do the allegations support a reasonable inference that Julie Convisser's failure to disclose information about the Martin Convisser Trust caused Claude Convisser to suffer injury.  Plaintiffs claim that the withholding of that information deprived Claude Convisser of "the ability to frame legal claims" related to the family trusts, forced him to place his inheritance at risk by challenging the creation and construction of the trusts, and ultimately rendered him homeless.  (*Id.* ¶¶ 51–52, 54.)  Those allegations are either too speculative or too attenuated to demonstrate the necessary causal link between breach and injury.  The court therefore will grant the motion to dismiss as to Count 2.

3.  Alleged violation of Va. Code § 54.1-2986.1(A) (Count 3)

Count 3 alleges that Defendants violated Va. Code § 54.1-2986.1(A) by issuing a no trespassing order that prohibits Claude Convisser from entering the Linden House facility and, as a result, prevents him from visiting his parents.  (Second Am. Compl. ¶¶ 59–77.)  He asks for injunctive relief against the no trespassing order.  (*Id.*)

Va. Code § 54.1-2986 outlines the procedure for authorizing health care for a patient who is deemed incapable of making an informed decision and has not made an advance

directive that addresses the health care decision at issue.  Va. Code Ann. § 54.1-2986(A).
Section 54.1-2986.1 then enumerates certain duties of an agent under an advance directive or
a person who has decision-making authority under § 54.1-2986.  Part of § 54.1-2986.1
addresses restrictions on visitation of the patient.  It provides that "[n]o person authorized to
make decisions for a patient under § 54.1-2986 shall have authority to restrict visitation of the
patient, unless such visitation was restricted by a guardian pursuant to the procedures
prescribed by § 64.2-2019.1."  *Id.* § 54.1-2986.1(A).

Plaintiffs allege that Julie Convisser is not authorized by an advance directive to make
decisions on behalf of the Convisser parents, has not been appointed as their legal guardian,
and thus has no legal authority to restrict Claude Convisser from visiting his parents.  (Second
Am. Compl. ¶¶ 64, 75–76.)  They claim that Va. Code § 54.1-2985.1 permits this court to grant
injunctive relief.  In relevant part, that section states:

> On petition of any person to the circuit court of the county or city in which any
> patient resides or is located for whom health care will be or is currently being
> provided, continued, withheld, or withdrawn pursuant to this article, the court
> may enjoin such action upon finding by a preponderance of the evidence that
> the action is not lawfully authorized by this article or by other state or federal
> law.

Va. Code. Ann. § 54.1-2985.1(A).

The second amended complaint does not plausibly allege a violation of § 54.1-
2986.1(A) against any Defendant.  To start, three Defendants—Wial, Cambridge Healthcare
Holdings, and Cox—lack a sufficient connection to the decision to prohibit Claude Convisser
from visiting the Linden House facility.  Wial merely owns the physical property where the
facility is located.  (Second Am. Compl. ¶ 9.)  Plaintiffs allege that Elizabeth Wells, the
executive director of Linden House, acted on Wial and Cambridge Healthcare Holdings'

- 12 -

behalf when she issued the no trespassing order, but there is no indication that Wells actually was an employee of either entity. (*See id.* ¶ 69.)  Plaintiffs also allege, without any factual support, that Cambridge Healthcare Holdings directed Linden House's actions, and that Cox, Julie Convisser's attorney, advised her to request the no trespassing order. (*Id.* ¶¶ 10, 12, 69.) Those conclusory statements do not suffice to show that Wial, Cambridge Healthcare Holdings, or Cox played any part in issuing the order, let alone that they violated § 54.1-2986.1(A).

Nor do Plaintiffs plead facts showing that Julie Convisser or Linden House violated § 54.1-2986.1(A).  While the court is unaware of any case law interpreting § 54.1-2986.1(A), the prohibition on restricting visitation plainly applies to a "person authorized to make decisions for a patient under § 54.1-2986."  Plaintiffs do not plausibly allege that either Julie Convisser or Linden House was exercising authority under § 54.1-2986 when the no trespassing order was issued.  Section 54.1-2986 contemplates a specific decision authorizing an "attending physician" to "provide, continue, withhold or withdraw health care."  Va. Code Ann. § 54.1-2986(A).  The alleged facts do not support a reasonable inference that Julie Convisser made health care decisions for her parents pursuant to that statute—and certainly not any decision related to the no trespassing order.  They also fail to demonstrate that Linden House or the three other Defendants even fall within a class of persons who may make health care decisions for the Convisser parents under § 54.1-2986.  *See id.*  The court will grant Defendants' motion to dismiss as to Count 3.

*       *       *

- 13 -

The court will dismiss all three counts in the second amended complaint with prejudice. The court's review of Plaintiffs' motion for leave to file a third amended complaint (Dkt. 262), their subsequent and numerous motions for leave to file a supplemental memorandum and substitute updated versions of their proposed third amended complaint (Dkts. 266, 273, 285), and their extensive briefings reveals that any additional leave would be futile in this case as key deficiencies in Plaintiffs' claims in the second amended complaint remain unaddressed throughout these filings. Although the court has not previously dismissed these claims, "district courts are not required to give plaintiffs one without-prejudice ruling on the merits before dismissing with prejudice." *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 113 (4th Cir. 2025) (quoting *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 196 (4th Cir. 2022)). Given the nature of the factual and legal defects in Plaintiffs' claims and Plaintiffs' substantial filing history the court is satisfied that any further amendment would be futile.

## III.    Plaintiffs' Motion for Leave to Amend

Plaintiffs' motion for leave to amend is not limited to the three claims that appear in the second amended complaint. Since filing that motion, Plaintiffs have asked the court three times for leave to substitute updated versions of their proposed third amended complaint. (Dkts. 266, 273, 285.) The latest—and most inclusive—is 156 pages in length. (Dkt. 285-1.) Each version expands substantially on the scope of the second amended complaint by re-alleging certain claims the court previously dismissed with prejudice, alleging new and reworked factual allegations in support of those claims, and alleging claims against new defendants. (*See* Dkts. 262-1, 267-1, 273-1, 285-1.)

Because Plaintiffs previously filed an amended complaint, they may amend again "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A plaintiff may move for leave to amend even when the court has previously dismissed a claim with prejudice. *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). It should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards*, 178 F.3d at 242 (emphasis omitted) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). An amendment is futile when "the proposed amended complaint fails to satisfy the requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted). Thus, courts "are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021).

The court has carefully reviewed the allegations in each version of Plaintiffs' proposed third amended complaint, as well as the parties' briefing on Plaintiffs' motions for leave. There is no need to recount their allegations at length here. It is clear that amendment would be futile. As noted above, Plaintiffs' proposed amendments do not correct any of the deficiencies in the three counts that appear in the second amended complaint. Plaintiffs also propose adding an "undue influence (fraud)" claim against Julie Convisser for alleged abuse of the power of attorney she exercises for Martin Convisser. (*See* Dkt. 285-1 ¶¶ 234–45.) That claim, which resembles one this court previously dismissed, asserts that Julie Convisser conspired with a physician to have Martin Convisser deemed legally incapacitated, then used her power

of attorney for her father to revise the Martin Convisser Trust in a way that limited Claude Convisser's inheritance. (*Id.* ¶¶ 192–93, 235; *see* Mem. Op. at 32–33). Plaintiffs suggest that Julie Convisser took those actions on behalf of the larger conspiracy led by Exxon. (*See* Dkt. 285-1 ¶¶ 241–42.) Those speculative allegations fail to satisfy the Rule 12(b)(6) pleading standard and Rule 9(b)'s heightened pleading standard.[4]

The remaining causes of action in the proposed amendments focus on the alleged business conspiracy orchestrated by Exxon, and they too fail to survive Rule 12(b)(6) scrutiny. Those claims are based on a convoluted web of far-fetched and conspiratorial allegations that Exxon and its many agents have colluded to surveil Claude Convisser, steal his property, manipulate the Convisser family's finances, and interfere with numerous aspects of his daily life. (*See, e.g.*, *id.* ¶¶ 109–27, 137–202.) Plaintiffs allege that numerous persons who have had interactions with Claude Convisser are serving as Exxon's agents in the conspiracy, and they claim that all manner of events provide evidence of Exxon's plot to thwart investment in Plaintiffs' alternative fuel business. These sensational and often bizarre allegations do not support any plausible claim to relief. *See, e.g.*, *Bardes v. South Carolina*, No. 1:11CV999, 2013 WL 3864405, at *6 (M.D.N.C. July 24, 2013) (citation omitted) ("Insubstantial and frivolous conspiracy theory claims . . . are routinely dismissed as frivolous."); *Camper v. Nat'l Sec. Agency*, No. 1:18-cv-01794, 2019 WL 3841940, at *7 (D. Md. Aug, 15, 2019) (declining, at the motion-to-dismiss stage, to credit a plaintiff's assumption that a government agency was responsible for several alleged incidents that she experienced). The facts Plaintiffs allege do not "raise a

---

[4] Undue influence is a species of fraud that must be pled with particularity. *See, e.g.*, *Am. United Life Ins. Co. v. Mays*, No. 2:17cv99, 2017 WL 3262251, at *5 (E.D. Va. July 31, 2017).

reasonable expectation that discovery will reveal evidence of" illegal conduct.  *Twombly*, 550 U.S. at 556.  Accordingly, the court will deny Plaintiffs' proposed amendments as futile.[5]

### IV.    Motion to Set Aside Order on Victor Glasberg's Motion for Sanctions

Finally, the court will deny Plaintiffs' motion to set aside Judge Memmer's June 5, 2025 order granting in part and denying in part Victor Glasberg's motion for sanctions.

Glasberg moved to sanction Plaintiffs under Federal Rule of Civil Procedure 11 after the court dismissed the claims alleged against him with prejudice.  (Dkt. 251.)  He argued that Plaintiffs' pleadings violated Rules 11(b)(1), (2), and (3) and asked the court to enjoin Plaintiffs from filing another suit against him unless they first obtained a signed attestation from a third-party lawyer.  (*Id.*)  Judge Memmer found that Plaintiffs failed to comply with Rule 11(b)(3) by "asserting factual contentions [against Glasberg] with no support in their pleadings and failing to engage in an adequate pre-filing inquiry" as to the allegations.  (Dkt. 286 at 9.)  Judge Memmer declined to impose a pre-filing injunction.  (*Id.* at 13.)  Instead, she ordered Claude Convisser to read the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Western District of Virginia and file a notice on the docket certifying his compliance no later than June 30, 2025.[6]  (*Id.* at 13–14.)

---

[5] In their motion for leave to amend and related filings, Plaintiffs also ask the court to reconsider its March 13, 2025 order under Rule 54(b), Rule 59(e), and Rule 60(b) of the Federal Rules of Civil Procedure.  (Dkts. 262, 266, 273, 285.)  The court has reviewed Plaintiffs' arguments, and it finds no reason to vacate that order.  Plaintiffs contend that the court made legal errors when it dismissed most claims in the first amended complaint with prejudice, and they note that their latest proposed pleadings include allegations about events that postdate the court's prior order.  (*See* Dkt. 273 at 11–12; Dkt. 285 at 5–14.)  The court is not persuaded by Plaintiffs' arguments that it made a legal mistake when it found the claims in the first amended complaint implausible and dismissed them with prejudice.  Nor is the court aware of any intervening change in law that casts doubt on the March 13, 2025 order.  Finally, the court has reviewed Plaintiff's allegations about events following March 13, 2025, and they do not support any claim for relief.

[6] Claude Convisser did not file a certification of compliance by the June 30, 2025 deadline as ordered by Judge Memmer.  (*See* Dkt. 286 at 13–14.)  Instead, on July 8, 2025, he filed a "certificate of compliance with the spirit of the magistrate judge's order," which stated that he had completed four Virginia continuing legal education courses on pleadings, federal

Plaintiffs move to set aside Judge Memmer's order under Federal Rule of Civil Procedure 72(a). Upon receiving a timely Rule 72(a) objection to a magistrate judge's ruling on a non-dispositive matter, the district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). An order is contrary to law if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Iovino v. Michael Stapleton Assocs., Ltd.*, No. 5:21-CV-00064, 2022 WL 17581491, at *3 (W.D. Va. Dec. 12, 2022) (quoting *Norris v. Excel Indus., Inc.*, No. 5:14-cv-00029, 2015 WL 4431022, at *2 (W.D. Va. July 20, 2015)). "In the context of Rule 72(a), this 'contrary to law' standard is equivalent to de novo review." *Id.* (quoting *Clinch Coal. v. U.S. Forest Serv.*, 597 F. Supp. 3d 916, 921 (W.D. Va. 2022)).

Plaintiffs argue that Judge Memmer's order was both clearly erroneous and contrary to law. (*See* Dkt. 290.) Judge Memmer did not clearly err in finding that the claims against Glasberg lacked any factual support and thus violated Rule 11(b)(3). Factual allegations fail to comply with Rule 11(b)(3) when they are "unsupported by *any* information obtained prior to filing" or are "based on information which minimal factual inquiry would disprove." *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 279 (4th Cir. 2006) (emphasis in original). Plaintiffs take issue with how Judge Memmer's order characterized some of their factual allegations about Glasberg, but it is clear those allegations are speculative, conspiratorial, and not grounded in fact. (*See* Dkt. 166-1 ¶¶ 212–21.) Plaintiffs also attached several email exchanges between Glasberg and Claude Convisser as exhibits to their response to the motion for sanctions. (*See*

---

motions practice, depositions, and expert witness testimony "with [his] copy of the Federal Rules at hand and the Local Rules on the computer before [him]." (Dkt. 295.)

Dkts. 258-1 through 258-5.)  As Judge Memmer noted, however, those exhibits provide no factual support for Plaintiffs' claims that Glasberg acted on behalf of Exxon and its agents or otherwise participated in the alleged conspiracy against Plaintiffs.  (*See* Dkt. 286 at 7–8.) Plaintiffs fail to show that they obtained any information prior to filing that would support their claims against Glasberg.

Nor was the decision to impose sanctions contrary to law.  Plaintiffs first argue that Judge Memmer's order improperly took punitive considerations into account when determining the proper sanction under Rule 11(c).  (Dkt. 290 at 3.)  As Plaintiffs note, Rule 11(c)(4) provides that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  It does not mention punishment of the misconduct as a factor courts may consider when determining an appropriate sanction.  Plaintiffs argue that Judge Memmer's order misstated the Rule 11(c)(4) standard when, quoting from an unpublished Fourth Circuit decision, it stated that the court must determine "the least extreme sanction reasonably calculated to achieve the appropriate punitive and deterrent purposes" of Rule 11.  (Dkt. 286 at 13 (quoting *Byrd v. Hopson*, 108 F. App'x 749, 756 (4th Cir. 2004)); *see also id.* at 4 (noting that one of the purposes of Rule 11 sanctions is to punish present litigation abuse).)  Despite those statements, it appears that Judge Memmer did not take punitive considerations into account when imposing the sanction.  The order states only that the sanction aimed "[t]o prevent future similar conduct by Plaintiffs."  (*Id.* at 13.)  And while Judge Memmer determined that the claims against Glasberg lacked factual support, she did not find that Plaintiffs filed the claims for an improper purpose, so there was no finding of intentional misconduct to punish in the first place.  (*See*

*id.* at 8–9.)  The court is not persuaded that the sanctions order was based on an erroneous application of Rule 11(c)(4).

Plaintiffs argue that the sanctions order was contrary to law for several other reasons. They contend that the order also misapplied Rule 11(c)(4) by focusing on deterrence when Plaintiffs already had represented that they would not continue pursuing their claims against Glasberg; that the order appeared to sanction Claude Convisser for a "history of vexatious litigation," which Glasberg never raised in his motion for sanctions; that the sanction imposed was not tailored to the violation; and, finally, that the order was premised on this court's erroneous dismissal of Plaintiffs' amended complaint.  (Dkt. 290 at 8–16.)  None of those arguments is persuasive.  Judge Memmer's order imposed a rather minor sanction that was appropriately tailored to address Claude Convisser's lack of knowledge of pleading requirements—shortcomings Claude Convisser himself acknowledged—and to deter future noncompliance with the Federal Rules.  (*See* Dkt. 286 at 9–10; Dkt. 258 at 4.)  The order referred to a litigant's "history of vexatious litigation" only as a factor to consider when determining whether a pre-filing injunction is appropriate, and it declined to impose that more severe sanction here.  (*See* Dkt. 286 at 11–13.)

The court therefore will deny Plaintiffs' motion to set aside the sanctions order.

## V.    Conclusion

For the reasons outlined above, the court will **GRANT** Defendants' motion to dismiss Plaintiffs' second amended complaint (Dkt. 271).  The second amended complaint will be **DISMISSED with prejudice**.  The court will **DENY** Plaintiffs' motion for leave to file a third amended complaint (Dkt. 262), their motions for leave to file a supplemental

memorandum and substitute updated versions of their proposed third amended complaint (Dkts. 266, 273, 285), and their motion to set aside the sanctions order (Dkt. 291). The court will **DENY** Plaintiffs' third motion for leave to conduct early discovery (Dkt. 296) as **moot**.

An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this 15th day of October, 2025.


HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE