CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
September 01, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Claude David Convisser, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| POP Diesel Africa, Inc., | ) | Civil Action No. 3:24-cv-00072 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Linden House, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on Plaintiffs Claude David Convisser and POP Diesel Africa, Inc.'s second motion to vacate judgment and for leave to amend. (Dkt. 303.) For the following reasons, the court will deny the motion.

## I. Background

The court assumes familiarity with the facts of the case, which are discussed in detail in the court's two previous memorandum opinions. (Dkt. 248 at 2–12; Dkt. 301 at 1–4.) At bottom, Plaintiffs allege that Exxon Mobil orchestrated a yearslong plot to thwart Plaintiffs' alternative fuel business and interfere with Convisser's life. (*See* Dkt. 248 at 1, 2–6, 8–10; Dkt. 301 at 1–2, 4.) Plaintiffs' first amended complaint asserted nine causes of action against thirty defendants, including three business conspiracy claims. (Am. Compl. ¶¶ 424–56 (Dkt. 100).) The amended complaint also asserted several state-law claims relating to the care of

Convisser's parents and the management of the Convisser family trusts. (Am. Compl. ¶¶ 457–616.)

On March 13, 2025, the court dismissed Plaintiffs' three business conspiracy counts with prejudice and denied Plaintiffs' motion for leave to file a second amended complaint as to those claims. (Dkt. 248 at 25–27.) In its analysis of both the first amended complaint and proposed second amended complaint, the court determined that granting Plaintiffs leave to amend would be futile as to the business conspiracy claims. (*Id.* at 26.) Despite the proposed second amended complaint's exhaustive factual allegations, the court found that Plaintiffs fell "far short of stating a plausible claim" for relief for these claims. (*Id.*) The court, however, granted Plaintiffs limited leave to amend and file a second amended complaint as to Counts 5 and 8 and proposed Count 10, all state-law claims. (*Id.* at 41–44.)

In accordance with the court's opinion, Plaintiffs filed a second amended complaint. (Dkt. 261.) That same day, Plaintiffs moved for leave to file a third amended complaint.[1] (Dkt. 262; Dkt. 262-1.) The operative proposed third amended complaint realleged the business conspiracy claims that the court dismissed with prejudice and added new causes of action against new defendants. (*See* Dkt. 285-1 ¶¶ 109–203, 277–88.) Plaintiffs also asked the court to reconsider its March 2025 order under Rules 54(b), 59(e), and 60(b) of the Federal Rules of Civil Procedure. (*See* Dkt. 273 at 11–12; Dkt. 285 at 5–14.)

The court dismissed Plaintiffs' second amended complaint in full and denied leave to amend as futile. (Dkt. 301 at 14, 16–17.) The court found that Plaintiffs' allegations still failed

---

[1] Plaintiffs subsequently asked to substitute three "corrected" versions of the proposed third amended complaint on three separate occasions. (*See* Dkt. 266; Dkt. 273; Dkt. 285.)

to support any plausible claim for relief. (*Id.* at 16.) Similarly, the court refused to vacate its March 2025 order, finding no legal mistake or intervening change of law. (*Id.* at 17 n.5.)

Now, Plaintiffs again ask the court to vacate its final orders, asserting that Plaintiffs have received "new facts" allowing them to amend their business conspiracy claims in a "way that is not futile." (Dkt. 304 at 1–2.) Plaintiffs' latest proposed third amended complaint drops all defendants included in the June version, (Dkt. 285-1), except for Exxon Mobil, and also adds two new defendants: GFL Environmental, a Canadian company that operates two trash-hauling facilities in Virginia, and the Haven, a nonprofit that operates a day shelter for unhoused residents of Charlottesville. (Dkt. 303-1 ¶¶ 26–28, 36–38.) In the proposed third amended complaint, Plaintiffs assert a RICO claim and a state and common law conspiracy claim against all three defendants; Plaintiffs also assert a single negligence count against the Haven. (*Id.* ¶¶ 71–215.)

Exxon opposed Plaintiffs' motion to vacate and requested that the court deny Plaintiffs leave to amend. (Dkt. 307.) The remaining state law defendants, Cambridge Healthcare Holdings, LLC, Julie M. Convisser, James P. Cox, III, and Wial, LLC, incorporated Exxon's arguments in their opposition. (Dkt. 308.) Plaintiffs replied, attaching yet another version of their proposed third amended complaint. (Dkt. 313; Dkt. 313-1.)[2]

[2] Because Plaintiffs attached this "updated third amended complaint" to their reply brief, defendants have not had a chance to review or respond to it. Plaintiffs may not amend a complaint "by alleging new facts in, and attaching exhibits to, their Opposition." *AMA Sys., LLC v. 3B Tech, Inc.*, No. 1:21-cv-01472, 2023 WL 7410854, at *5 (D. Md. Nov. 9, 2023); *see also United States Just. Found. v. Response Unlimited, Inc.*, No. 5:25-cv-00074, 2026 WL 498890, at *5 (W.D. Va. Feb. 23, 2026) (declining to consider exhibits attached to plaintiff's brief in opposition, as well as any new factual allegations included in the brief); *Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC*, No. 1:21-cv-00515, 2022 WL 3446051, at *4 (M.D.N.C. Aug. 17, 2022) ("[B]ecause these grounds for leave to amend were advanced for the first time in a reply brief, the court need not consider Plaintiffs' 'Revised Proposed Amended Complaint.'"); *Ross v. Conner*, No. 1:14-cv-98-FDW, 2015 WL 3542833, at *1 (W.D.N.C. June 4, 2015) (denying motion for leave to amend because plaintiff failed to attach a proposed amended complaint to his motion). Thus, the court will decline to consider the "updated third amended

## II. Standard of Review

Plaintiffs filed their second motion to vacate "under Rules 59(e), 60(b)(2), and 15(a)(2)" of the Federal Rules of Civil Procedure. (Dkt. 303 at 1.) Rules 59(e) and 60(b) both provide post-judgment relief to a plaintiff. *See Graham v. Honeywell Int'l, Inc.*, No. CV TDC-21-0310, 2022 WL 4017459, at *2 (D. Md. Sept. 2, 2022) (construing motion for reconsideration and leave to amend after dismissing and closing the case as being pursuant to Rules 59(e) or 60(b)). However, when a "post-judgment motion is filed within [twenty-eight] days of the entry of judgment and calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e)." *Mundo-Violante v. Kerry*, No. 5:15-cv-00064, 2017 WL 766911, at *1 (W.D. Va. Feb. 27, 2017); *see Miller v. Live Nation Worldwide, Inc.*, No. CV CBD-14-2697, 2016 WL 1696541, at *3 (D. Md. Apr. 28, 2016) ("A motion to alter or amend filed within twenty eight (28) days of the judgment is analyzed under Rule 59(e); if the motion is filed later, Rule 60(b) controls."). Because Plaintiffs' second motion to vacate was filed on November 12, 2025—twenty-eight days after the court's dismissal order—the court will analyze it as a Rule 59(e) motion to alter or amend a judgment.

In addition to their second request that the court vacate its October 2025 dismissal order, (Dkt. 301), Plaintiffs also seek leave to amend and file a third proposed amended complaint. (Dkt. 303 at 1.) Because Plaintiffs move to alter or amend "for the purpose of seeking leave to amend the complaint, a conclusion that leave to amend should be granted is a sufficient basis to vacate a judgment." *Graham*, 2022 WL 4017459, at *3 (citing *Mayfield v.*

---

complaint," and treat as operative the proposed third amended complaint, (Dkt. 303-1), that was properly attached to Plaintiffs' motion to vacate and for leave to amend, (Dkt. 303).

*Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012); *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006)). Thus, to determine whether to grant vacatur, "the court 'need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a).'" *Beg v. Mayorkas*, No. 1:22-cv-01224, 2023 WL 8622288, at *2 (E.D. Va. Nov. 2, 2023) (quoting *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 470–71 (4th Cir. 2011)), *aff'd*, No. 23-2261, 2024 WL 773595 (4th Cir. Feb. 26, 2024).

A court should freely grant leave to amend when justice so requires, even where claims have been dismissed with prejudice. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018); Fed. R. Civ. P. 15(a)(2). A court should deny a motion to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis omitted). "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber*, 438 F.3d at 427. An amendment that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant" is a "common example" of a prejudicial amendment. *Id.* (quotation omitted). By contrast, an amendment that comes early in the case and "merely adds an additional theory of recovery to the facts already pled" is not prejudicial. *Id.* Regardless of its timing, an amendment is futile when "the proposed amended complaint fails to satisfy the requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted). Thus, courts "are free to deny leave to amend as futile if the complaint fails to

withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards*, 178 F.3d at 243. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). But to avoid Rule 12(b)(6) dismissal, the plaintiff must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## III. Analysis

District courts are "given broad discretion to grant or deny a motion to amend a complaint." *Red Bird Egg Farms, Inc. v. Pa. Mfrs. Indem. Co.*, 15 F. App'x 149, 152 (4th Cir. 2001) (citing *Gladhill v. Gen. Motors*, 743 F.2d 1049, 1052 (4th Cir. 1984)). The court proceeds by examining whether Plaintiffs' proposed third amended complaint "would be prejudicial to the

opposing party" or "would be futile." *Equal Rights Ctr. v. Niles Bolton Assoc.,* 602 F.3d 597, 603 (4th Cir. 2010).

**A. Futility**

The proposed third amended complaint seeks to allege, for the fourth time, a business conspiracy orchestrated by Exxon. Specifically, the proposed third amended complaint attempts to bring a RICO and civil conspiracy claim against Exxon Mobil, GFL Environmental, and the Haven. (Dkt. 303-1 ¶¶ 71–147 (outlining proposed Counts 1 and 2).) But Plaintiffs' proposed third amended complaint fails to correct the deficiencies that have been repeatedly identified by the court. (*See* Dkt. 248 at 14–18, 21–24; Dkt. 301 at 14–17.) Accordingly, the court will deny leave to amend Counts 1 and 2 as futile.

1. <u>Count 1: RICO Act, 18 U.S.C. §§ 1961–1968</u>

Plaintiffs contend that the proposed third amended complaint can plausibly state a RICO claim because it adds "new information which has come to them" and introduces "newly discovered evidence." (Dkt. 304 at 3.) Plaintiffs claim that the addition of GFL Environmental as a defendant allows them to "trace relationships by a succession of entities from 2008 to the present day defendants," which shows a RICO association-in-fact enterprise. (Dkt. 313 at 5–6); *see United States v. Pinson*, 860 F.3d 152, 161 (4th Cir. 2017) (holding that an association-in-fact enterprise must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose" (cleaned up)). But the proposed third amended complaint still lacks any non-speculative, non-conclusory allegations that GFL Environmental formed relationships with

Exxon or the Haven for the purpose of thwarting POP Diesel Africa's business ventures. (*See, e.g.*, Dkt. 303-1 ¶ 27 (alleging, without factual support, that GFL Environmental is the "unified face of the New York Organized Crime Biodiesel Mafia[]"); *id.* ¶¶ 31–32, 43 (alleging that GFL Environmental chose to operate in Charlottesville with the "knowledge and consent of Exxon's intelligence service" and that it "enlisted" the Haven to harm Plaintiffs by raising funds to support the construction of a new homeless shelter); *id.* ¶ 43 (alleging the Haven's construction of a new shelter for the homeless will "provid[e] a hub from which [GFL Environmental] agents masquerading as homeless people can operate to further criminal enterprise").)

Plaintiffs' new allegations regarding the Haven similarly fail to address the deficiencies in their prior RICO claims. Plaintiffs' assertion that the Haven is involved in Exxon's alleged conspiracy rests on speculative claims that the Haven staff and unhoused residents are "agents" performing the bidding of Exxon and the "New York Organized Crime Biodiesel Mafia." (*See, e.g.*, *id.* ¶¶ 82, 89 (describing the Haven's Operations Director as an "agent" of Defendants who "attempt to distract Claude Convisser and subject him to the will of another by enticing him into a relationship with a woman"); *id.* ¶ 83 (alleging that Izel Nelson, an unhoused resident of the Haven who Convisser claims assaulted him, is an "agent of Exxon or the Biodiesel Mafia" whose family was "bribed" by "Exxon or the New York Organized Crime Biodiesel Mafia"); *id.* ¶¶ 84, 85 (alleging that Josaiah Talley, an unhoused resident of the Haven who was found guilty of assaulting and battering Convisser, is an "agent of Exxon's intelligence service" and claiming that "two more of the defendants' agents" are "posing as

homeless men at the Haven"); *id.* ¶ 89 ("[Defendants] seized on this Court's second dismissal in order to set the stage as soon as possible for banning [Convisser] from the Haven.").) Despite Plaintiffs' inclusion of two new defendants and a new cast of characters, they continue to rely on the type of conclusory and speculative allegations the court has twice held insufficient to state a claim for relief. (*See* Dkt. 248 at 22; Dkt. 301 at 16.)

Similarly, while Plaintiffs' proposed third amended complaint identifies numerous predicate acts to show "a pattern of racketeering activity," the facts alleged still "do not plausibly suggest that Exxon or any other Defendant actually committed those predicate acts." (Dkt. 248 at 23); *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (requiring allegations that show a pattern of racketeering activity for a RICO claim to survive). All of the predicate acts alleged in the proposed third amended complaint lack any concrete or plausible connection to any Defendant. (*See, e.g.*, Dkt. 303-1 ¶¶ 72–77 (claiming misappropriation of trade secrets without describing any actions taken by the Haven, GFL Environmental, or Exxon); *id.* ¶¶ 80–81 (describing the actions of a Ghanaian man, Akambasi Afoko; a staff member at a local FedEx store; a man claiming to be a licensed radon remover; a Malian journalist; unspecified "females"; and the director of a local bank); *id.* ¶¶ 82–94 (describing actions of unhoused residents and staff of the Haven).)

Finally, Plaintiffs' proposed third amended complaint also fails to address issues with their RICO conspiracy claims under § 1962(d). (*See* Dkt. 248 at 23; Dkt. 301 at 16.) Plaintiffs argue that it is "not implausibly conclusory[] that each of the three named defendants 'knowingly and intentionally agreed that he or some other member of the conspiracy would

commit at least two racketeering activities.'" (Dkt. 313 at 7 (citing *United States v. Devine*, 40 F.4th 139, 150 (4th Cir. 2022)).) But as this court has stated, speculative and conclusory claims describing the actions of various "agents" and other persons who have interacted with Convisser are not sufficient to allege that Defendants *themselves* knowingly and intentionally agreed to participate in an enterprise targeting Plaintiffs. (*See* Dkt. 248 at 23); *see Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 608 (D. Md. 2014) (finding that "[m]ere conclusory allegations that all Defendants generally conspired or helped each other violate Section 1962(a) or (c)" are insufficient to survive a motion to dismiss). Plaintiffs assert that "[a]n example of direct evidence of combination between Exxon and GFL" is the statement of one resident of the Haven to another resident that "you're doing good." (Dkt. 313 at 7 (citing Dkt. 313-1 ¶¶ 84(d), 116(c)).) This is precisely the type of "unwarranted inference[], unreasonable conclusion[], and naked assertion[] devoid of further factual enhancement" that is simply "not entitled to the presumption of truth." *Wikimedia Found.*, 857 F.3d at 208 (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)) (cleaned up).

Ultimately, the proposed third amended complaint's new and re-pled allegations against Exxon, GFL Environmental, and the Haven fail to offer anything more than conclusory language that Defendants operated as a RICO enterprise, conducted a pattern of racketeering activity, or conspired to conduct racketeering activity for the purpose of thwarting Plaintiffs' business ventures. *See Nunes v. Fusion GPS*, 531 F. Supp. 3d 993, 1007–08 (E.D. Va. 2021). Such "naked assertions devoid of further factual enhancement[]" do not satisfy the

requirements of Rule 12(b)(6). *Gallant v. Deutsche Bank Nat'l Tr. Co.*, 766 F. Supp. 2d 714, 718 (W.D. Va. 2011) (quoting *Iqbal,* 556 U.S. at 678) (cleaned up).

2. Count 2: Civil Conspiracy under common law and Virginia Code §§ 18.2-499 and 18.2-500

Plaintiffs' proposed third amended complaint fails to state a claim for common-law business conspiracy or statutory conspiracy for many of the same reasons. As this court has discussed, Plaintiffs have not identified any non-speculative, non-conclusory allegations that any of the Defendants conspired with other persons for the purpose of injuring Plaintiffs' business. *Dunlap v. Cottman Transmission Sys.*, LLC, 754 S.E.2d 313, 317 (Va. 2014); *see also Meadows v. Northrop Grumman Innovation Sys., Inc.*, 436 F. Supp. 3d 879, 891 (W.D. Va. 2020) (explaining the same elements as to a common-law conspiracy claim). None of Plaintiffs' new and re-alleged allegations remedy this deficiency the court already identified. (*See, e.g.*, Dkt. 303-1 ¶¶ 98–99 (describing a statement by a Salvation Army shelter manager concerned with staffing a larger homeless shelter as evidence that Haven guests are monitoring Plaintiffs); *id.* ¶ 101 (alleging the Haven's proposal for a larger homeless shelter is promoted "solely on instruction from its masters the defendants").)

Plaintiffs also contend that their new allegations against GFL Environmental and the Haven demonstrate that the alleged conspirators acted with "legal malice" to willfully or maliciously damage Plaintiffs' business or induce others to do the same. (*See* Dkt. 313 at 7 (citing *Dunlap*, 754 S.E.2d at 317).) But there is no allegation that the Haven took any action against Plaintiffs' business ventures at all, let alone one "without lawful justification." *Dunlap*, 754 S.E.2d at 317. And Plaintiffs' allegation that GFL Environmental "knowingly" received

Plaintiffs' trade secrets is a legal conclusion unsupported by any factual allegations. (*See generally* Dkt. 303-1 ¶¶ 72–77 (lacking any allegations about how or when the trade secrets, allegedly stolen by another company, were knowingly received by GFL Environmental).) Finally, as this court has made clear, allegations regarding the "unlawful surveillance" of Plaintiffs must be more than conclusory statements made without factual support. (*See* Dkt. 248 at 20.) The fact that the proposed third amended complaint now names the Haven as a participant in the "[s]weeping, unlawful electronic surveillance of plaintiffs," (Dkt. 303-1 ¶ 133), does not make those claims any less conclusory.

Plaintiffs describe the dismissals of their claims with prejudice as "unprecedented," (Dkt. 313 at 2), but "district courts are not required to give plaintiffs one without-prejudice ruling on the merits before dismissing with prejudice." *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 113 (4th Cir. 2025). Plaintiffs also characterize the court's most recent memorandum opinion as "accurately describ[ing] in pejorative language the claims and defendants' actions without analyzing the underlying substance." (Dkt. 313 at 2.) This court has reviewed—and continued to review with diligence—Plaintiffs' amended complaints and proposed amended complaints in detail. It is the conclusory and speculative nature of Plaintiffs' allegations, "rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Iqbal*, 556 U.S. at 681.

Plaintiffs have now had four opportunities to sufficiently allege a business conspiracy between Exxon and any number of Defendants. The proposed third amended complaint has not corrected any of the deficiencies identified in the court's prior opinions. (*See* Dkt. 248 at

17–25; Dkt. 301 at 14–16.) Fourth Circuit precedent is clear that courts may deny leave to amend after repeated failures to cure deficiencies and state a claim for relief. *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (upholding district court's denial of leave to amend where plaintiffs had set forth four iterations of their complaint that failed to state a claim); *Daulatzai v. Maryland*, 606 F. Supp. 3d 252, 262 (D. Md. 2022), *aff'd*, 97 F.4th 166 (4th Cir. 2024) (denying leave to amend where plaintiff's prior amendments had failed to cure specific legal deficiencies or provide "precise clarification or supplementation of her factual allegations to surpass" threshold legal issues); *Beckford v. Elevance Health, Inc.*, No. 3:23-cv-828, 2024 WL 3974241, at *9 (E.D. Va. Aug. 28, 2024) (denying leave to amend where plaintiff had "already placed three iterations of her Complaint before the Court" and a third amendment would "cause undue prejudice" to Defendants and "likely be futile").

Despite this case's extensive briefing, the benefit of two memorandum opinions setting forth the applicable legal standards for Plaintiffs, and ample opportunities to amend, Plaintiffs have not stated any plausible business conspiracy claim against any Defendant. "When so much time, access, and guidance have failed to nudge the complaint along, the district court may reasonably put its foot down rather than permit another round because of yet another vague promise of clarity." *United States ex rel. Kyer v. Thomas Health Sys., Inc.*, 178 F.4th 119, 139 (4th Cir. 2026). The court denies leave to amend Plaintiffs' business conspiracy claims as futile.[3]

---

[3] Plaintiffs' briefing clarifies that they also move the court to vacate its judgment as to their three state-law claims against Julie Convisser. (Dkt. 304 at 4.) These claims were not realleged in the proposed third amended complaint; instead, Plaintiffs suggest that altering the judgment on these claims will "permit state courts to interpret state law consistently" and suggest that the court erroneously dismissed their claim for Julie Convisser's breach of duty as "Trust Protector" as a

**B. Prejudice**

In addition to futility, courts may deny leave to amend "when the amendment would be prejudicial to the opposing party." *Equal Rights Ctr. v. Niles Bolton Assoc.,* 602 F.3d 597, 603 (4th Cir. 2010). A proposed amendment can be unduly prejudicial to the opposing party if it is belated and "would change the nature of the litigation." *Id.* at 604. Amendments that change the nature of the litigation often "seek to change the nature of the claims asserted and add parties who have not been served." *Campbell v. Getachew*, No. CV GLR-19-1173, 2020 WL 5747177, at *8 (D. Md. Sept. 25, 2020).

Granting Plaintiffs leave to amend would be unduly prejudicial. Plaintiffs' proposed third amended complaint would drop all but one of the previously included defendants, add two new defendants, and include a new state-law claim for negligence against a new defendant. Courts have found similar amended pleadings to be prejudicial. *See, e.g.*, *Red Bird Egg Farms*, 15 F. App'x at 154 (upholding district court's denial of leave to amend where amendment would "add a theory of the case" that would require the addition of new parties and witnesses). Although prejudice is often determined by the amendment's proximity to the close of discovery or trial, "prejudice sufficient to deny leave to amend can also accrue where a plaintiff's pleadings are repeatedly dismissed." *Daulatzai*, 606 F. Supp. 3d at 265; *see also United States ex rel. Kyer v. Thomas Health Sys., Inc.*, No. 2:20-CV-00732, 2025 WL 1094916, at *4

fiduciary duty claim rather than a breach of contract claim. (*Id.* at 4–6.) But Plaintiffs cite no case law, and this court found none, to support their argument that the court should vacate its judgment with respect to state-law claims solely because they are state-law claims. In addition, the court has explained that "[a] beneficiary's action against a trustee is properly brought as a claim for breach of fiduciary duty rather than as a breach of contract." (Dkt. 301 at 7 (quoting *Boyle v. Anderson*, 871 S.E.2d 226, 229 (Va. 2022)).)

(S.D.W. Va. Apr. 11, 2025), *aff'd*, 178 F.4th 119 (4th Cir. 2026) (denying leave to amend despite the case "remain[ing] stalled at the pleading stage"). Here, Defendants assert that they have spent substantial time and incurred substantial expenses responding to Plaintiffs' motions. (*See* Dkt. 307 at 10 (describing Exxon's expenditures as "substantially more than $100,000"); Dkt. 308 at 1 (incorporating arguments made in Exxon's opposition)); *see also Daulatzai*, 606 F. Supp. 3d at 265 (finding prejudice against defendants where they had spent "substantially more than $100,000" litigating successive amended complaints) (emphasis omitted). "Although this case has not progressed past the pleading stage, the Court concludes that . . . the costs imposed thereby on Defendants have been sufficiently prejudicial to warrant denying leave to file a Third Amended Complaint." *Daulatzai*, 606 F. Supp. 3d at 266.

Moreover, Plaintiffs' proposed third amended complaint asserts a new negligence claim against the Haven. The allegations related to the Haven and its staff members arise out of entirely "different factual circumstances" than those that gave rise to this action. *Lewis v. Jackson*, No. 8:24-cv-7660, 2025 WL 4482207, at *4 (D.S.C. Dec. 16, 2025). Permitting Plaintiffs to essentially file a new case on new facts against "multiple new defendants, after the case has been pending for years, would be prejudicial to both the existing defendants and the proposed new defendants." *Ofori v. Clarke*, No. 7:18-CV-00587, 2022 WL 2904877, at *4 (W.D. Va. July 22, 2022), *aff'd sub nom. Ofori v. Dotson*, No. 22-6979, 2023 WL 6972424 (4th Cir. Oct. 23, 2023); *NKR, Inc. v. Forestland Grp., LLC*, No. 1:04-cv-00104, 2005 WL 1123629, at *2 (W.D. Va. May 11, 2005) ("To start the case anew against the additional parties would prolong the litigation and result in additional expense to everyone involved."); *see Mayfield*, 674 F.3d at

379–80 (upholding district court's denial of leave to amend where, among other issues, the new allegations and causes of action arose out of "an entirely new event and nucleus of facts"). The court will decline to grant an amendment that would so change the nature of the litigation—especially coming after multiple amended complaints, two memorandum opinions, and the dismissal of approximately thirty-nine defendants.

In general, reconsideration of a final judgment under Rule 59(e) is an "extraordinary remedy[] to be used sparingly." *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 290 (4th Cir. 2021) (cleaned up). Here, Plaintiffs are attempting to use Rule 59(e) in order to: (1) re-plead business conspiracy claims after repeatedly failing to state a claim; (2) incorporate two new defendants into these conspiracy claims; and (3) assert a new state-law claim, with significant new factual allegations, against a new defendant. The court finds that these amendments would be both futile and prejudicial. The court will therefore deny Plaintiffs' motion to vacate the final judgment.

## IV. Conclusion and Order

For these reasons, the court **DENIES** Plaintiffs' second motion to vacate the court's judgment and motion for leave to amend. (Dkt. 303.)

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

**ENTERED** this 1st day of September, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE